GREER-BURGER, APPELLEE, *v.* TEMESI, APPELLANT.

[Cite as *Greer–Burger v. Temesi,* 116 Ohio St.3d 324, 2007-Ohio-6442.]

(No. 2006–1616—Submitted September 11, 2007—Decided December 12, 2007.)

O'CONNOR, J.

{¶ 1} This is a case of first impression that requires us to weigh the statutory rights of an employee to seek redress for claims of discrimination without retaliation against the constitutional right of an employer to petition the courts for redress after prevailing in the employee's cause of action against him. For the reasons that follow, we hold that an employer is not barred from filing a well-grounded, objectively based action against an employee who has engaged in a protected activity.

## Relevant Background

{¶ 2} This matter dates to June 10, 1998, when plaintiff-appellee, Tammy Greer–Burger, filed a sexual-harassment suit against defendant-appellant, Laszlo Temesi. Greer–Burger's suit went to trial, the jury found in favor of Temesi, and the trial court entered judgment accordingly. Subsequently, Temesi initiated an action against Greer–Burger for abuse of process, malicious prosecution, and intentional infliction of emotional distress. Temesi claimed that he had incurred $42,334 in attorney fees and costs by defending against Greer–Burger's lawsuit. Included in his request for relief were claims for compensatory and punitive damages.

{¶ 3} On November 6, 2000, in response to Temesi's lawsuit, Greer–Burger filed a sworn-charge affidavit with the Ohio Civil Rights Commission ("OCRC"). In 2003, based simply on the fact that Temesi filed the suit, the administrative-law judge found that Temesi's lawsuit was a prohibited retaliatory violation under R.C. 4112.02(I). The administrative-law judge recommended that the OCRC order Temesi to "cease and desist from all discriminatory practices"—specifically, prosecuting his lawsuit.

{¶ 4} A hearing on damages was held on February 24, 2004. At the hearing, Greer–Burger testified that in defending against Temesi's lawsuit, she had incurred legal expenses of over $16,000 that she was unable to pay. Thereafter, she filed for bankruptcy.

{¶ 5} Greer–Burger did not list the pending retaliation claim on her schedule of assets, but her debts, including her attorney fees, were discharged. Notwithstanding the discharge, Greer–Burger testified at the hearing that she still owed the attorney fees. Based on this testimony, the administrative-law judge recommended that the OCRC order Temesi to pay Greer–Burger $16,000.

{¶ 6} The OCRC subsequently adopted the administrative-law judge's findings of fact and conclusions of law and ordered Temesi "to cease and desist from all discriminatory practices * * * [and] pay to [Greer–Burger] $16,000 for attorney fees." In effect, the order prohibited Temesi from proceeding with his lawsuit.

{¶ 7} Temesi filed an administrative appeal with the Cuyahoga County Court of Common Pleas, which affirmed the order of the OCRC.

{¶ 8} On further appeal, the Eighth District Court of Appeals affirmed the judgment because (1) Temesi sought to recover more than just the attorney fees, and (2) the language of R.C. 4112.02(I) "essentially creates an absolute privilege for the filing of a discrimination suit or charge * * * [so] Temesi's filing of the civil suit was retaliatory." *Greer–Burger v. Temesi,* 8th Dist. No. 87104, 2006-Ohio-3690, 2006 WL 2023571, at ¶ 24-25. In addition, the court of appeals determined that "the fact that Greer's attorney fees were discharged in a

bankruptcy neither hinders nor precludes a money judgment against Temesi for a violation of R.C. 4112.02(I) for retaliation." Id. at ¶ 36.

{¶ 9} We accepted Temesi's discretionary appeal to address the issue of whether enjoining the prosecution of a well-founded lawsuit commenced in response to the prosecution of an unsuccessful sexual-harassment lawsuit violates the right to petition the government for redress of grievances as guaranteed by the First Amendment to the United States Constitution. We are asked also to consider whether a party who fails to schedule in a bankruptcy proceeding a pending or impending lawsuit is equitably and judicially estopped from pursuing the action.

## Analysis

{¶ 10} The right to petition one's government for the redress of grievances is enshrined within the First Amendment to the United States Constitution.[1] It reads, "Congress shall make no law * * * abridging * * * the right of the people * * * to petition the Government for a redress of grievances." In our own jurisprudence, we recognize that the "ability to seek redress in the courts is a fundamental right, guaranteed by the due process provision of the Fourteenth Amendment to the United States Constitution, and restrictions on such a right require 'close scrutiny' by the judiciary." *Krause v. State* (1972), 31 Ohio St.2d 132, 150, 60 O.O.2d 100, 285 N.E.2d 736 (Brown, J., dissenting).

{¶ 11} Despite the paramount importance placed on the ability to access the courts for redress of injuries, the right is not absolute. Of particular relevance to our discussion here is that the First Amendment does not protect "sham" litigation. *E. RR. Presidents Conference v. Noerr Motor Freight, Inc.* (1961), 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (in the context of antitrust litigation). The United States Supreme Court has defined sham litigation as a "lawsuit [that is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized * * *." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* (1993), 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611.

{¶ 12} This principle has found its way into case law analyzing Title VII discrimination actions. Because Ohio's own antidiscrimination laws found in R.C. Chapter 4112 are modeled after Title VII, the definition of sham litigation applies to this case. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128

---

1. The First Amendment to the United States Constitution was made applicable to the states through the Fourteenth Amendment. See, e.g., *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Assn.* (1967), 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426, fn. 4.

("federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112").

{¶ 13} Turning to the antiretaliatory provision of R.C. 4112.02(I), it is "an unlawful discriminatory practice * * * [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." To establish a case of retaliation, a claimant must prove that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action.[2] *Canitia v. Yellow Freight Sys., Inc.* (C.A.6, 1990), 903 F.2d 1064, 1066.

{¶ 14} If a complainant establishes a prima facie case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. If the employer satisfies this burden, the burden shifts back to the complainant to demonstrate "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 15} In applying the law to the facts of the case, we cannot countenance the OCRC's conclusion that Témesi's act of filing suit is per se retaliatory. Even assuming arguendo that Greer–Burger has established a prima facie case of retaliation, Temesi must be afforded an opportunity to show that there is an objective basis for his lawsuit. Allowing this per se standard would undermine the right to petition for redress by giving an administrative agency "the power to punish a reasonably based suit filed in * * * court whenever *it* concludes— insulated from *de novo* judicial review * * * that the complainant had one motive rather than another." (Emphasis sic.) *BE & K Constr. Co. v. Natl. Labor Relations Bd.* (2002), 536 U.S. 516, 538, 122 S.Ct. 2390, 153 L.Ed.2d 499 (Scalia,

---

2. Although Greer–Burger left Temesi's employ in 1997, former employees are covered under the antidiscrimination statutes. *Robinson v. Shell Oil Co.* (1997), 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808. The fact that R.C. 4112.02 uses the term "person," which has a broader definition than "employee," provides further evidence that Greer–Burger could still be covered under the statute. Likewise, the adverse action need not be employment-related, so the filing of a lawsuit or a counterclaim can constitute an adverse employment action in circumstances such as those in this case. *Burlington N. & Santa Fe Ry. Co. v. White* (2006), — U.S. —, 126 S.Ct. 2405, 2412–2415, 165 L.Ed.2d 345.

J., concurring). This danger is further highlighted when the only evidence of the complainant's retaliatory motive is the simple act of filing a lawsuit.

{¶ 16} Instead, we find it more prudent to permit an employer the opportunity to demonstrate that the suit is not objectively baseless. In determining whether the employer's action has an objective basis, the OCRC administrative-law judge should review the employer's lawsuit pursuant to the standard for rendering summary judgment. Cf. *Bill Johnson's Restaurants, Inc. v. Natl. Labor Relations Bd.* (1983), 461 U.S. 731, 745, 103 S.Ct. 2161, 76 L.Ed.2d 277, fns. 11 and 12. Thus, an employer needs to "show[ ] his lawsuit raises genuine issues of material fact." Id. at 746, 103 S.Ct. 2161, 76 L.Ed.2d 277. If the employer satisfies this standard, the suit does not fall under the definition of sham litigation. The suit, therefore, shall proceed in court while the proceedings before the OCRC shall be stayed. Id. at 745–746, 103 S.Ct. 2161, 76 L.Ed.2d 277. The procedure outlined above falls within the jurisdiction of the OCRC as provided for in R.C. 4112.04 and promotes judicial economy because the employer's lawsuit will not have to be fully litigated in the trial court before the OCRC can make its determination as to the reasonableness of the suit. In this way, the OCRC essentially shall vet the action to ensure that it is not sham litigation.

{¶ 17} This approach fully comports with that of federal courts in these disputes. See, e.g., *Pettway v. Am. Cast Iron Pipe Co.* (C.A.5, 1969), 411 F.2d 998, fn. 22 (employer is not precluded from filing a suit for malicious defamation, but is prohibited from firing an employee for complaints to the Equal Employment Opportunity Commission); *Baker v. Summit Unlimited, Inc.* (N.D.Ga. 1994), 855 F.Supp. 375, 377 (employer may file legal action as long as the case is shown not to be retaliatory and is brought in good faith); *Equal Emp. Opportunity Comm. v. Levi Strauss & Co.* (N.D.Ill.1981), 515 F.Supp. 640, 644 ("those suits initiated in state court in good faith and as an attempt to rehabilitate the employer's reputations which may have been tarnished by the charges are not necessarily violations of [Title VII]"). Therefore, merely filing a suit is insufficient evidence of an employer's retaliatory motive. Here Temesi was barred from the courthouse only because he sought damages for his injuries.

{¶ 18} To mask the lack of any substantive findings, the OCRC now relies heavily on Temesi's decision to seek punitive damages as evidence of retaliation. The administrative-law judge's findings of fact and conclusions of law, however, do not refer to the punitive-damages portion of Temesi's claim. In the absence of any meaningful administrative review, we cannot conclude that the punitive-damages claim standing alone is sufficient to establish retaliation.

{¶ 19} Certainly, a claim for punitive damages can *support* a finding of retaliation. Cf. *Diamond Walnut Growers, Inc. v. Natl. Labor Relations Bd.* (C.A.9, 1995) 53 F.3d 1085, 1089. However, just as the filing of a lawsuit is not

per se retaliatory, the inclusion of a punitive-damages demand does not equal per se retaliatory animus.[3]  Rather, because punitive damages are authorized under R.C. 2315.21 for the claims Temesi brought, the punitive-damages claim should be analyzed within the context of the entire lawsuit.[4]  Cf. *Natl. Labor Relations Bd. v. Internatl. Union of Operating Engineers, Local 520, AFL–CIO* (C.A.7, 1994), 15 F.3d 677, 680 ("while it is well established that * * * [an] employer's request for money damages against an employee may support an inference that the lawsuit was filed for retaliatory purposes, * * * [the] request for punitive damages did not suggest an illegal motive because punitive damages are regularly asked for and awarded under Illinois law where the defendant has committed a willful tort").

{¶ 20} As mentioned above, however, the administrative-law judge's findings do not refer to Temesi's punitive-damages claim.  Moreover, because of the erroneous decision regarding Temesi's act of simply filing suit, the administrative agency has not had the opportunity to review the lawsuit in its entirety in accordance with the standard we outlined previously.  Thus, if on remand the administrative-law judge finds that Temesi's suit lacks merit, that finding, coupled with the punitive-damages claim, could support a determination that Temesi's suit is retaliatory.  Cf. *Petrochem Insulation, Inc. v. Natl. Labor Relations Bd.* (C.A.D.C.2001), 240 F.3d 26, 34.

{¶ 21} Like all citizens, employers who are truly aggrieved deserve the opportunity to have their cases heard.  The alternatives proposed by the OCRC, filing for sanctions and attorney fees pursuant to Civ.R. 11 or R.C. 2323.51, which address frivolous conduct in civil actions, are poor substitutes for First Amendment avenues of relief and may not make a party whole.  Moreover, under the OCRC's analysis, filing motions under these provisions is per se retaliatory.  After all, the objective of both filing a separate lawsuit and a motion for attorney fees would be the same:  to recover losses caused by a discrimination lawsuit.

---

3.  It stands to reason, of course, that if an employee pursues the underlying discrimination claim with the OCRC pursuant to R.C. 4112.05 and the OCRC finds probable cause, any subsequent employer-filed lawsuit with a punitive-damages claim would support a strong inference of a retaliatory motive, as the administrative agency would have essentially vetted the employee's case and found that it had some merit.  We do not mean to say that an employee who elects the option to file suit with the trial court has filed a meritless discrimination claim and can be subjected to a punitive-damages demand simply on that basis, as we will explain below.

4.  Although some may argue that allowing an employer to seek punitive damages will have a chilling effect on employee lawsuits, a blanket prohibition on employer punitive damages would open the door to truly frivolous cases.  In such circumstances, an employer should be given the chance to establish a claim for punitive damages.  The standard we announce today permits precisely this process.

{¶ 22} The standard we announce today rectifies the conflict between the antidiscrimination statutes' purpose of protecting claimants who engage in a protected activity and employers' ability to exercise their First Amendment rights. The record before us, however, is incomplete, and we are not in the position to determine whether Temesi's suit is objectively baseless.

{¶ 23} The decisions of the lower courts are vacated. We hold that it was an abuse of discretion to affirm the OCRC's order due to a lack of reliable, probative, and substantial evidence supporting the decision. *Cleveland Civ. Serv. Comm. v. Ohio Civ. Rights Comm.* (1991), 57 Ohio St.3d 62, 565 N.E.2d 579. The case, therefore, is remanded to the OCRC to determine whether Temesi can establish that his claims are not objectively baseless. If Temesi's suit satisfies this standard, the proceedings before the OCRC should be stayed.

{¶ 24} Because the OCRC's cease-and-desist order is vacated, it is axiomatic that Greer–Burger's award of attorney fees must be vacated as well. We also note that because her attorney fees were discharged in bankruptcy, and because she took an inconsistent factual position in not listing her pending retaliation claim, she is equitably and judicially estopped from recovering attorney fees for that claim.

{¶ 25} "The doctrine of judicial estoppel 'forbids a party "from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." ' " *Griffith v. Wal–Mart Stores, Inc.* (C.A.6, 1998), 135 F.3d 376, 380, quoting *Teledyne Industries, Inc. v. Natl. Labor Relations Bd.* (C.A.6, 1990), 911 F.2d 1214, 1217, quoting *Reynolds v. Commr. of Internal Revenue* (C.A.6, 1988), 861 F.2d 469, 472–473. "Courts apply judicial estoppel in order to 'preserve[ ] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.' " Id., quoting *Teledyne* at 1218. "The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." *Griffith* at 380. Courts have applied this doctrine when inconsistent claims were made in bankruptcy proceedings that predated a civil action. Cf. *Wallace v. Johnston Coca–Cola Bottling Group, Inc.* (Mar. 26, 2007), S.D.Ohio No. 1:06–cv–875, 2007 WL 927929, *4 (plaintiff barred from proceeding with discrimination claim for failure to disclose the claims to the United States Bankruptcy Court); *Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill & Ritter, L.P.A.*, 148 Ohio App.3d 440, 2002-Ohio-3328, 773 N.E.2d 1081, ¶ 38 (where client had twice successfully asserted its position that financing statements were not misleading, once before bankruptcy court and again before federal district court, plaintiff was precluded from asserting that statements were misleading in legal malpractice action);

*Guidoumbouzianii v. Johnson* (Mar. 26, 1997), 1st Dist. No. C–960597, 1997 WL 133363, *1 (position that party did not have contingent real-estate claim to schedule in bankruptcy proceeding precludes party from asserting claim in later judicial proceeding); *Bruck Mfg. Co. v. Mason* (1992), 84 Ohio App.3d 398, 401, 616 N.E.2d 1168 (failure to state litigation as asset in bankruptcy proceedings prevents debtor from asserting claim for money in later proceeding).

{¶ 26} Because the appellate court believed that "the fact that [Greer–Burger's] attorney fees were discharged in a bankruptcy neither hinders nor precludes a money judgment against Temesi for * * * retaliation," *Greer–Burger,* 2006-Ohio-3690, 2006 WL 2023571, ¶ 36, the court of appeals failed to consider Greer–Burger's concealment of her retaliation charge as it relates to the bankruptcy process.

{¶ 27} Clearly, Greer–Burger's concealment violated the goal of the bankruptcy proceeding. "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin* (Bankr. E.D.Mich.2003), 288 B.R. 477, 481. By concealing the claim, Greer–Burger undermined the bankruptcy trustee's ability to perform his duties because the performance of those duties is contingent on an accurate and complete disclosure. Id.

{¶ 28} In this case, Greer–Burger did not list her retaliation claim on her bankruptcy schedule, but she was able to have her attorney fees discharged. Because "[a] discharge in bankruptcy is sufficient to establish a basis for judicial estoppel, 'even if the discharge is later vacated,'" *Eastman v. Union Pacific RR. Co.* (C.A.10, 2007), 493 F.3d 1151, 1160, quoting *Hamilton v. State Farm Fire & Cas. Co.* (C.A.9, 2001), 270 F.3d 778, 784, Greer–Burger's actions support the application of judicial estoppel in these circumstances.

{¶ 29} First, she took an inconsistent, yet successful, position in the prior bankruptcy proceeding.[5] In addition, it can be inferred that the failure to disclose the claim was not inadvertent because (1) she was aware of the retaliation claim when she filed for bankruptcy, so there was no reason it was not

---

5. The OCRC contends that we should not allow Temesi to assert this defense pursuant to the maxim that "he who seeks equity must do equity, and that he must come into court with clean hands." *Christman v. Christman* (1960), 171 Ohio St. 152, 154, 12 O.O.2d 172, 168 N.E.2d 153. Under this rule, equitable relief is not available to a person who "has violated good faith by his prior-related conduct." *Marinaro v. Major Indoor Soccer League* (1991), 81 Ohio App.3d 42, 45, 610 N.E.2d 450. In this case, Temesi, vindicated by a jury of his peers, came into court with clean hands and has no official stain on his record. Id. The fact that Greer–Burger filed for bankruptcy following the filing of Temesi's lawsuit may have been an unforeseen consequence of Temesi's decision to file suit, but it does not serve now to prohibit Temesi from asserting an equitable defense.

listed as an asset, (2) a motive to conceal can be inferred because the fees were discharged, so she would be able to personally recover those fees, and (3) there is a lack of evidence that she timely took "affirmative action to fully inform the court and the trustee of the asset's existence." *In re Johnson* (Bankr.W.D.Mich. 2006), 345 B.R. 816, 823. Thus, Greer–Burger should not be able to receive the benefit of a discharge and subsequently, a few months later, obtain a windfall by recovering an award of attorney fees that flow from the undisclosed asset.

{¶ 30} We realize that Temesi did not raise the judicial-estoppel argument at either the administrative level or the trial court proceedings. Typically, this failure would preclude Temesi from raising the objection on appeal. Temesi, however, did not forfeit the objection because R.C. 4112.06(C) provides that an objection not preserved before the OCRC may be considered under "extraordinary circumstances." Certainly, circumstances such as the ones present in this case—in which Greer–Burger failed to disclose the retaliation claim, had her debts discharged, testified under oath that the fees remained outstanding, and has recovered those fees while Temesi has been precluded from seeking redress from the courts—can be considered extraordinary. Moreover, Temesi raised the issue at the first available opportunity when he learned of Greer–Burger's previously undisclosed actions. In doing so, Temesi has not forfeited the judicial estoppel argument.

{¶ 31} Although the award of attorney fees has been vacated by our decision to vacate the cease-and-desist order, Greer–Burger is judicially estopped, for the reasons expressed in the preceding paragraphs, from recovering the attorney fees should the OCRC rule again in her favor.

### Conclusion

{¶ 32} An employee's right to pursue a discrimination claim without fear of reprisal is a laudable goal entitled to considerable weight. The OCRC's position in this case, however, has the potential to give employees carte blanche to file malicious, defamatory, and otherwise false claims. As the concurring opinion of the appellate court astutely noted, the per se standard advocated by the OCRC does not advance the goal of R.C. Chapter 4112 when it "permits a claimant to engage in any kind of slander or defamation, and possibly even perjury, without consequence," and then precludes "those falsely accused of being discriminators from seeking legal redress." *Greer–Burger*, 2006-Ohio-3690, 2006 WL 2023571, ¶ 38 (Corrigan, J., concurring).

{¶ 33} We therefore reverse the judgment of the court of appeals and remand this cause to the OCRC for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

MOYER, C.J., and O'DONNELL and CUPP, JJ., concur.

Pfeifer, Lundberg Stratton, and Lanzinger, JJ., concur in part and dissent in part.

---

**Lanzinger, J., concurring in part and dissenting in part.**

{¶ 34} I concur in reversing the judgment of the Eighth District Court of Appeals, but dissent in part and write separately because of what appears to me a lopsided balancing of the competing interests at hand.

{¶ 35} Ohio gives broad protection to employees who claim employment discrimination. It is "an unlawful discriminatory practice * * * [f]or any person *to discriminate in any manner* against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." (Emphasis added.) R.C. 4112.02(I).

{¶ 36} This statute plainly protects an employee from retaliation by an employer when the employee has been involved in what has been termed a "protected activity." *Canitia v. Yellow Freight Sys., Inc.* (C.A.6, 1990), 903 F.2d 1064, 1066. The majority opinion, however, erodes this statutory protection by holding in paragraph two of the syllabus that an employer may sue an employee "[i]f an employer can demonstrate that a lawsuit against an employee * * * is not objectively baseless." Couched in terms of upholding the right to redress, this rule is overly generous to the employer, while placing employees at risk for enforcing their rights. I dissent and would hold that an employer should be allowed to file a complaint to recoup losses to reputation only when the employee's action had no basis in fact, and that such an action should not be deemed retaliatory within the meaning of R.C. 4112.02(I).

{¶ 37} The majority's "not objectively baseless" test sets a very low threshold and means that if an employee loses an underlying discrimination lawsuit, the employer may always seek to recover economic damages such as attorney fees in defending the suit. In other words, any employee who protested against discrimination in the workplace unsuccessfully would risk having to defend an action by the employer unless the employer's action is a "sham." Because a sham lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* (1993), 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611, it is difficult to see how any lawsuit filed by an employer who successfully defended a discrimination action falls within that category. Claims for redress after an employee's failed litigation can hardly be deemed "objectively baseless" when measured by the summary judgment standard that the majority proposes. Consequently, Ohio Civil Rights Commission administrative judges

must allow every employer lawsuit to proceed under circumstances such as these, regardless of the chilling effect the suits may have on other employees. I do not believe that the majority's standard properly balances the rights at stake.

{¶ 38} Although I agree with the first paragraph of the syllabus that the mere filing of a lawsuit by an employer is not per se retaliation, I would also hold that such a filing raises retaliation as a prima facie issue to be rebutted. The employer may respond by showing how the employee's previous discrimination claim was totally without merit. But such a showing should involve more than a judgment in the employer's favor, and certainly more than the "material issues of fact" required to be present to survive under a summary judgment standard.

{¶ 39} I also dissent from the majority's conclusion that a punitive damages claim does not establish retaliation and that "the punitive-damages claim should be analyzed within the context of the entire lawsuit."

{¶ 40} Notwithstanding the majority's citation of Illinois' regular practice of seeking punitive damages for willful torts, we have held repeatedly that "[t]he purpose of punitive damages is not to compensate a plaintiff, but to punish *and deter* certain conduct." (Emphasis added.) *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 651, 635 N.E.2d 331. We also held in *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 439, 715 N.E.2d 546, that "a punitive damages award is more about defendant's behavior than the plaintiff's loss." Indeed, it is possible that a punitive damage award may ultimately dwarf a compensatory award.

{¶ 41} Because the purpose of punitive damages claims is to punish and deter the conduct of the defendant, it is my view that an employer engages in retaliatory conduct by seeking such a remedy against an employee who has exercised the right to bring a discrimination lawsuit but has ultimately failed in that endeavor. Although the majority defends its position by saying "a blanket prohibition on employer punitive damages would open the door to truly frivolous cases," this statement ignores the converse—that in every case, including the nonfrivolous, an employee may face the possibility of an award of punitive damages as part of a lawsuit to compensate a prevailing employer. Allowing the routine inclusion of punitive damages in suits against employees who lose their cases will have a freezing, rather than a chilling, effect on others who wish to exercise their rights under the antidiscrimination statutes.

{¶ 42} I do agree, however, that with respect to situations in which an employee has filed a totally baseless claim, the employer should be allowed to be made whole for defending the unfounded accusations by filing a claim for defamation, abuse of process, or intentional infliction of emotional distress. The federal cases cited in the majority opinion support the idea that claims for defamation to protect one's reputation are not retaliatory within the meaning of

federal discrimination law. The right to redress allows for full compensation, and any "punishment" of the employee for filing a false claim comes in the form of compensatory damages and attorney fees rather than punitive damages.

{¶ 43} The majority has adopted a loose standard that will encourage employers to sue those employees who do not prevail on discrimination claims, a result that weakens the protection given under the statutes. I therefore dissent from paragraph two of the syllabus and contend that a better test would be to confine an employer's responsive lawsuit only to situations in which the employee has filed totally unsubstantiated—i.e., frivolous—charges and has damaged the employer's reputation. The employer could then seek complete redress, but not punitive damages.

{¶ 44} I concur in the vacating of both the Ohio Civil Rights Commission's cease-and-desist order and the award of attorney fees to Greer–Burger.

PFEIFER and LUNDBERG STRATTON, JJ., concur in the foregoing opinion.

---

Marc Dann, Attorney General, Elise Porter and Benjamin Mizer, Deputy Solicitors, Susan Sullivan, Assistant Solicitor, and Wayne D. Williams, Assistant Attorney General, for appellee Ohio Civil Rights Commission.

Summers and Vargas Co., L.P.A., William Lawrence Summers, and Edwin J. Vargas; and Frantz Ward L.L.P., and Kelly Summers Lawrence, for appellant.

Gittes & Schulte, Frederick M. Gittes, and Kathaleen B. Schulte, urging affirmance for amici curiae, the Ohio Employment Lawyers Association and the Committee Against Sexual Harassment.