[Cite as *Saha v. Research Inst. at Nationwide Children's Hosp.*, 2013-Ohio-4203.]

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

Kunal Saha, :

             Plaintiff-Appellant, :       No. 12AP-590
                                  (C.P.C. No. 11CV-14336)

v. :

                                 (REGULAR CALENDAR)

Research Institute at Nationwide :
Childrens Hospital,

               :

             Defendant-Appellee. :

               :

---

### D E C I S I O N

### Rendered on September 26, 2013

---

*Dagger, Johnston, Miller, Ogilive & Hampson, LLP*, and *D. Joe Griffith*, for appellant.

*Vorys, Sater, Seymour and Pease, Jonathan R. Vaughn* and *Taryn M. Filo*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

McCORMAC, J.

{¶ 1} Plaintiff-appellant, Dr. Kunal Saha, appeals from the June 19, 2012 decision of the Franklin County Court of Common Pleas granting the motion to dismiss, converted to a motion for summary judgment, filed by defendant-appellee, the Research Institute at Nationwide Children's Hospital ("the Institute").

## I. Facts and Procedural History

{¶ 2} In June 1998, Dr. Saha accepted a joint appointment as a research faculty member at the Institute and a tenure-track assistant professor in The Ohio State

University's Department of Pediatrics, College of Medicine. *See Saha v. The Ohio State Univ.*, 10th Dist. No. 10AP-1139, 2011-Ohio-3824, ¶ 3-4.

{¶ 3}   In *Saha*, this court provided a detailed account of Dr. Saha's time with the Institute and The Ohio State University ("OSU"). We found, in pertinent part:

> Dr. Saha's position was that of a primary researcher. He was placed in charge of a lab and given a support staff and post-doctoral students for his work in AIDS research. Dr. Saha was simultaneously employed by both OSU and the Columbus Children's Hospital as a member of the Children's Research Institute ("CRI").
>
> * * *
>
> In December 2001, Dr. Saha travelled to India to lecture at an AIDS conference. He was scheduled to return in a few weeks. Dr. Saha testified that, while in India, his lawyers petitioned the Federal Supreme Court of India to allow Dr. Saha's criminal negligence case against his deceased wife's doctors to proceed to trial. This was allowed by the court on the condition that Dr. Saha attend the trial.
>
> Dr. Saha remained in India through January and February 2002. In early March, Dr. Saha requested a leave of absence which was approved by the OSU Board of Trustees at their April 5, 2002 meeting.
>
> Dr. Saha returned to Columbus at the end of April 2002. On May 1, 2002, Dr. Saha was informed that his CRI internal support package for his laboratory research would end June 30, 2002.
>
> * * *
>
> Dr. Saha testified that the loss of internal support reduced his lab staff from five or six to two or three with which he was unable to continue with his research at the same level as before.

*Id.* at ¶ 4-12.

{¶ 4}   Dr. Saha continued his laboratory work, but the reduction in financial support and resources "had a negative effect on [his] overall research progress." (R. 24, Dr. Saha's Affidavit, at 1, hereinafter "Saha Affidavit, at ____.")  After a lengthy, multi-

level promotion and tenure review process, Dr. Saha was informed on September 25, 2005, that OSU would not be offering him tenure.

{¶ 5}  In July 2005, Dr. Saha filed a lawsuit against the Institute and OSU in the United States District Court for the Southern District of Ohio, Eastern Division ("Lawsuit I"), but the court dismissed the action on October 26, 2005 for lack of subject-matter jurisdiction and failure to exhaust administrative remedies. *Saha v. The Ohio State Univ.*, S.D.Ohio No. 05-CV-675 (Oct. 26, 2005). On March 13, 2006, Dr. Saha re-filed his suit in the United States District Court ("Lawsuit II"), naming as defendants the Institute, OSU, and several employees from the Institute and OSU. *Saha v. The Ohio State Univ.*, S.D.Ohio No. 2:06-CV-190 (Feb. 1, 2007).  On June 28, 2006, Dr. Saha filed an amended complaint, which named additional OSU employees as defendants.  Dr. Saha's amended allegations against the Institute included federal claims for breach of contract, pursuant to 42 U.S.C. 1981, violation of equal protection and due process, pursuant to 42 U.S.C. 1983, and race and national origin discrimination under Title VII, as well as state law claims for unjust enrichment, intentional infliction of emotional distress, and discrimination under R.C. 4112.99.

{¶ 6}  In its February 1, 2007 decision, the federal District Court held that Dr. Saha's federal law claims failed to state a cause of action against the Institute.  Having dismissed all of Dr. Saha's federal law claims, the court declined to exercise its supplemental jurisdiction over Dr. Saha's state law claims, dismissing those claims without prejudice.  The U.S. Sixth Circuit Court of Appeals affirmed the United States District Court's judgment on January 9, 2008.  *Saha v. The Ohio State Univ.*, 259 Fed.Appx. 779 (6th Cir.2008).

{¶ 7}  In early 2007, Dr. Saha filed a new lawsuit ("Lawsuit III") in the Court of Claims of Ohio against OSU and several OSU employees which set forth claims for breach of contract, discrimination, and defamation. *See Saha v. The Ohio State Univ.*, Ct of Cl. No. 2007-02050, 2010-Ohio-5906. The Court of Claims found in favor of OSU and the individual defendants; this court affirmed the trial court's judgment on August 4, 2011. *See Saha*, 2011-Ohio-3824.

{¶ 8}  On November 18, 2011, Dr. Saha filed his complaint in the instant action, alleging two separate claims for breach of contract.  On December 19, 2011, the Institute

filed a motion to dismiss, asserting both judicial estoppel and res judicata applied to bar Dr. Saha's claims.  Dr. Saha filed a memorandum in opposition on January 30, 2012.  On June 19, 2012, the trial court issued a decision and entry converting the Institute's motion to dismiss to a motion for summary judgment pursuant to Civ.R. 12(B), and granting the motion in the Institute's favor.  Specifically, the trial court declined to apply judicial estoppel, but held the doctrine of res judicata applied to bar Dr. Saha's claims.

## II. Assignments of Error

{¶ 9}  Dr. Saha timely appeals the trial court's judgment and sets forth a single assignment of error for review:

> The Trial Court erred in dismissing Appellant's Complaint based upon the doctrine of res judicata.

{¶ 10}  Additionally, the Institute has filed a cross-appeal raising one assignment of error:

> The trial court erred in declining to apply judicial estoppel to bar Appellant from bringing his present claims in light of his failure to disclose these claims in his bankruptcy proceedings.

## III. Standard of Review

{¶ 11} Pursuant to Civ.R. 56(C), summary judgment "is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing left to try." *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), citing *Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2 (1982). As such, "[i]t must be awarded with caution, resolving any doubts and construing all the evidence against the moving party." *Id.*  Summary judgment is appropriate only when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 12} Appellate review of summary judgment motions is de novo. *Nye v. Univ. of Toledo*, 10th Dist. No. 12AP-670, 2013-Ohio-2311, ¶ 6, citing *Koos v. Cent. Ohio Cellular,*

*Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). When reviewing a trial court's ruling on summary judgment, the appellate court conducts an independent inquiry, without deference to the trial court's determination. *Id.*, citing *Maust* at 107; *Brown* at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

## IV. Appellee's Cross-Assignment of Error - Judicial Estoppel

{¶ 13} The Institute's cross-assignment of error challenges the trial court's refusal to apply judicial estoppel to appellant's claims. Because a finding for the Institute on its cross-assignment of error would bar Dr. Saha from pursuing his present action and thereby resolve his appeal, we address it first.

{¶ 14} The judicial estoppel doctrine "precludes a party from assuming a position in a legal proceeding inconsistent with a position taken in a prior action." *Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill & Ritter, L.P.A.,* 148 Ohio App.3d 440, 2002-Ohio-3328, ¶ 37 (10th Dist.), citing *Bruck Mfg. Co. v. Mason*, 84 Ohio App.3d 398 (8th Dist.1992); *Hilliard v. Lease*, 10th Dist. No. 95APE04-473 (Jan. 16, 1996), *appeal not allowed*, 76 Ohio St.3d 1419 (July 17, 1996). It is an equitable doctrine intended to prevent abuse of the judicial process " ' "through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment." ' " *Cristino v. Ohio Bur. of Workers' Comp.,* 10th Dist. No. 12AP-60, 2012-Ohio-4420, ¶ 44, quoting *Greer-Burger v. Temesi,* 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 25, quoting *Griffith v. Wal-Mart Stores, Inc.,* 135 F.3d 376, 380 (6th Cir.1998). This court has cautioned that judicial estoppel "should be applied with caution in order to avoid impinging on the truth-seeking function of the courts." *Scioto Mem. Hosp. Assn., Inc. v. Price Waterhouse & Co.*, 10th Dist. No. 90AP-1124 (Dec. 21, 1993), *aff'd in part and rev'd in part on other grounds*, 74 Ohio St.3d 474 (1996).

{¶ 15} The Institute asserts the doctrine of judicial estoppel precludes Dr. Saha from pursuing the present litigation because Dr. Saha did not include his claim against the Institute as a potential asset when he filed a Chapter 13 voluntary bankruptcy petition in December 2010, nor did he amend his petition to include the subject case until after the Institute filed its motion to dismiss. In response, Dr. Saha acknowledges that he erred by

failing to disclose his potential claims against the Institute in his bankruptcy petition, but he maintains judicial estoppel should not apply to bar his present action because his failure to disclose was inadvertent.

{¶ 16} The principle that judicial estoppel is not appropriate when a debtor's failure to disclose a claim in a prior bankruptcy proceeding is inadvertent was recognized by the Supreme Court of Ohio in *Greer-Burger* at ¶ 11. *See also Lewis v. Weyerhaeuser Co.,* 141 Fed.Appx. 420, 426 (6th Cir.2005) (holding "[i]t is well-settled that judicial estoppel does not apply where the prior inconsistent position occurred because of 'mistake or inadvertence' "), quoting *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir.2002); *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (holding it "do[es] not question that it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake' "). *Id.,* quoting *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 29 (4th Cir.1995). Though the *Greer-Burger* court ultimately found "it [could] be inferred that [plaintiff's] failure to disclose the claim was not inadvertent," in so holding, the court relied on federal jurisprudence indicating "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Greer-Burger* at ¶ 29, citing *In re Johnson*, 345 B.R. 816, 823 (Bankr.W.D.Mich.2006), citing *Browning* at 776. *See also White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 478 (6th Cir.2010) (holding that "[t]o support a finding of judicial estoppel in the bankruptcy context, a court must find," (1) the debtor assumed a position that was contrary to the one she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position as either a preliminary matter or as part of a final disposition; and (3) the "debtor's omission did not result from mistake or inadvertence"). *Johnson*, the federal case cited by the *Greer-Burger* court, provides further guidance on when "[a] debtor's failure to disclose a cause of action might be deemed inadvertent." *Id.* at 822. Specifically, the *Johnson* court held a debtor's omission is inadvertent " 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' " where there is " 'no motive for concealment,' " or where there is an " 'absence of bad faith.' " *Id.* at 822-23, quoting *Browning* at 776; *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 895 (6th Cir.2004). A court may find there is an absence of bad faith where, for instance, the

debtor does not actively conceal the asset and instead takes steps to inform the court and the trustee of the asset's existence. *Id.*, citing *Eubanks*. *See also Greer-Burger* at ¶ 29 (finding debtor's omission was not inadvertent based on the three considerations articulated in *Johnson*), citing *Johnson*.

{¶ 17} Here, Dr. Saha contends the evidence demonstrates that he did not act in bad faith and "at the most, this was an honest mistake." (Saha Affidavit, at 4.) In his affidavit submitted with his memorandum contra, Dr. Saha explains that he filed his state action in the Court of Claims of Ohio in 2007 against both OSU and the Institute, but when the "Court of Claims denied jurisdiction over [the Institute,] * * * [he] chose not to litigate both claims at once [in separate courts] and sought to be made whole in [his] claims from Ohio State." (Saha Affidavit, at 2.) In December 2010, Dr. Saha filed for Chapter 13 bankruptcy while his case against OSU was pending before this court. Dr. Saha emphasizes in his affidavit that his bankruptcy petition included his then-pending OSU case as a potential asset, and asserts that he "failed to realize that [his] potential claim against [the Institute] * * * should also have been mentioned"; he explains that not only was there no claim against the Institute pending in 2010, but, since his claims against OSU and the Institute "were seeking identical damages," he "was not sure if any claims against [the Institute] would be re-filed at all as of the time of the filing of [his] bankruptcy." (Saha Affidavit, at 4.) The record shows that this court affirmed the trial court's judgment in OSU's favor in August 2011 and Dr. Saha brought the instant case against the Institute on November 18, 2011, "seek[ing] the same damages that [he] had sought against Ohio State University." (Saha Affidavit, at 3.) *See Saha*, 2011-Ohio-3824. Dr. Saha had not amended his bankruptcy documentation to reflect this change by December 19, 2011 when the Institute filed its motion to dismiss alleging, inter alia, judicial estoppel based on the 2010 bankruptcy petition. Dr. Saha indicates that he only "realize[d]" his mistake "after seeing [the Institute's] motion to dismiss," but he then took steps to amend his petition to include his claim against the Institute. (Saha Affidavit, at 4.) The parties do not dispute that Dr. Saha successfully amended his petition in January 2012.

{¶ 18} The Institute challenges Dr. Saha's reliance on a "self-serving affidavit," claiming it "is not sufficient to show his failure to disclose was inadvertent." (Appellee's

brief, at 40.)  However, while " 'a party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials * * *, will not be sufficient to demonstrate material issues of fact,' " an "otherwise-competent affidavit is not invalid for the sole reason that it is executed by a party and submitted to aver facts in opposition to summary judgment." *TJX Cos., Inc. v. Hall,* 183 Ohio App.3d 236, 2009-Ohio-3372, ¶ 30 (8th Dist.), quoting *Davis v. Cleveland,* 8th Dist. No. 83665, 2004-Ohio-6621; *Patel v. Krisjal, L.L.C.,* 10th Dist. No. 12AP-16, 2013-Ohio-1202, ¶ 35. "To the contrary, a party's affidavit is competent to create a genuine issue of material fact if the relevant factual assertions are made on personal knowledge." *Id.*, citing *Wolf v. Big Lots Stores, Inc.*, 10th Dist. No. 07AP-511, 2008-Ohio-1837, ¶ 12. Thus, because Dr. Saha's affidavit "do[es] not present mere conclusory assumptions but set[s] forth matters within [his] personal knowledge," the trial court properly considered it when determining whether genuine issues of material fact exist which preclude summary judgment. *Id.*

{¶ 19} The Institute further alleges that Dr. Saha's efforts to correct his omission are of little significance because they came after the Institute filed its motion to dismiss. *See, e.g., White* at 480 (holding "efforts to correct an omission that came before the Defendants filed their motion to dismiss are more important than efforts that came after the Defendants filed their motion to dismiss"). Although the Institute does not dispute that Dr. Saha amended his petition in January 2012 to reflect the present case, it points to jurisprudence cautioning against considering such efforts at the risk of "encourag[ing] gamesmanship." *White* at 481. We recognize the importance of employing such caution when considering whether a debtor's delayed efforts to correct an omission are of any significance at all where their omission was revealed by a defendant; nevertheless, we find the present instance involves unique circumstances which, considered as a whole, raise a genuine issue of material fact as to whether Dr. Saha's omission in particular was inadvertent. *Compare White* at 479-80, fn 5 (holding judicial estoppel was appropriate where debtor had already filed harassment claim complaint before the EEOC and received a "Notice of Right to Sue" on July 8, 2008, just one month before she filed for bankruptcy, yet she "did not even (partially) amend her initial bankruptcy filings, which she made on August 8, [2008], until November 11, 2008"

and made "limited and ineffective attempts to correct her initial misfiling"); *Lewis* at 427-28 (holding debtor's "minimal alleged effort" to correct her omission was inadequate to suggest she acted in good faith where she "began the process of filing her discrimination claim with the EEOC only one month after the bankruptcy plan was approved, which tends to show that she waited until the plan was approved before pursuing her discrimination action," and she "never sought to amend her bankruptcy schedules, nor did she file a motion or make any other sort of attempt to inform the bankruptcy court of her discrimination action").

{¶ 20} Ultimately, although the Institute claims judicial estoppel is applicable in the matter sub judice because "[a]ll factors permit the Court to infer that Appellant's failure to disclose his claims was not inadvertent," when considering the Institute's motion for summary judgment, this court "is not permitted to weigh evidence or choose among reasonable inferences." (Appellee's brief, at 32.); *Tonti v. E. Bank Condominiums, L.L.C.*, 10th Dist. No. 07AP-388, 2007-Ohio-6779, ¶ 25. Instead, we must resolve all reasonable inferences in favor of Dr. Saha, as the non-moving party, and grant summary judgment "only when it appears from the evidentiary material that reasonable minds can only reach a conclusion adverse as to the party opposing the motion." *Dupler v. Mansfield Journal Co., Inc.,* 64 Ohio St.2d 116, 120 (1980); *Pilz v. Dept. of Rehab. & Corr.,* 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

{¶ 21} When we apply this standard to the record and construe the evidence in the light most favorable to Dr. Saha, reasonable minds could differ as to whether Dr. Saha's failure to disclose his case against the Institute was inadvertent. Accordingly, a genuine issue of material fact remains in dispute and the trial court did not err in declining to grant summary judgment in the Institute's favor pursuant to the judicial estoppel doctrine on Dr. Saha's breach of contract claims. The Institute's cross-assignment of error is overruled.

## V. Appellant's Assignment of Error - Res Judicata

{¶ 22} Dr. Saha's sole assignment of error challenges the trial court's holding that res judicata applied to bar his claims against the Institute.

{¶ 23} "The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as

collateral estoppel)."   (Emphasis sic.)   G*rava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995).  The present matter implicates the claim preclusion branch of res judicata, which provides, " '[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction * * * is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them.' "  *Id.*, quoting *Norwood v. McDonald*, 142 Ohio St. 299 (1943), paragraph one of the syllabus.  Such " 'an existing final judgment or decree * * * is conclusive as to all claims which were *or might have been* litigated in a first lawsuit.' "  (Emphasis sic.)  *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990), quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986).  Notably, the doctrine applies as between federal court and state court holdings, so that the judgment or decree of a federal court possessing competent jurisdiction will be "final as to the subject matter thereby determined" for state court purposes as well.  *Rogers* at 69.

{¶ 24} Here, the parties agree that the only prior litigation relevant to a res judicata inquiry is Lawsuit II, in which the United States District Court dismissed Dr. Saha's federal law claims against the Institute for failure to state a claim and dismissed his state law claims without prejudice after declining to exercise its pendent jurisdiction over the claims.

{¶ 25} On appeal, Dr. Saha contends that the District Court's resolution of Lawsuit II does not bar his present action because his "state law claims have never been litigated on the merits." (Appellant's brief, at 8.)  Indeed, it is axiomatic that a dismissal "*without prejudice*" is a dismissal "otherwise than on the merits." (Emphasis sic.)  *Troyer v. Janis*, 132 Ohio St.3d 229, 2012-Ohio-2406, ¶ 14. Because res judicata requires a "final judgment or decree rendered upon the merits," it follows that a dismissal without prejudice "means that the dismissal has no res judicata effect."  *Rak-Ree Ents., Inc. v. Timmons*, 10th Dist. No. 10AP-476, 2011-Ohio-1090, ¶16; *Brubaker v. Ross*, 10th Dist. No. 01AP-1431, 2002-Ohio-4396, ¶ 13.  *See also Goudlock v. Voorhies,* 119 Ohio St.3d 398, 2008-Ohio-4787, ¶ 10 (holding "[a] dismissal without prejudice constitutes an adjudication other than on the merits and prevents the dismissal from having res judicata effect").

{¶ 26} Nevertheless, the Institute reiterates on appeal its argument, accepted as "persuasive" by the trial court, that "there has been a prior, valid judgment on the merits when the District Court dismissed Appellant's federal claims [for failure to state a claim] in Lawsuit II." (Appellee's brief, at 18.) The Institute contends that Dr. Saha's argument differentiating between the federal court's treatment of his federal law claims and his state law claims "draws a distinction not recognized by the courts," as the " 'doctrine of res judicata does not distinguish between federal claims and state claims.' " (Appellee's brief, at 19, quoting *Lambert v. Miamisburg*, 2d Dist. No. 12031 (Mar. 29, 1991).

{¶ 27} The Institute cites to several cases which it suggests support its position. However, in every case cited by the Institute for the principle that "final judgments on *only* federal claims can still bar subsequent state law claims," the federal court was asked to consider only federal law claims, and the Ohio appellate court, in reviewing the plaintiff's later state action, concluded the plaintiff could have, and did not, assert their subsequent state law claims in the prior federal action. (Emphasis sic; Appellee's brief, at 19.) *See Holt v. State,* 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 13 (holding, where plaintiff had asserted only a federal law claim before the federal court, her subsequent state action asserting state law claims was barred by res judicata because those claims could have been raised in her federal action; additionally finding the collateral estoppel branch of res judicata applied to bar some of the state action claims because they involved issues—related to whether "the state acted improperly when it terminated appellant's employment"—which the federal court resolved pursuant to plaintiff's federal claim for discrimination in violation of federal law); *Lambert* (finding, although "the claims brought in Federal Court were purely federal in nature whereas those brought in State Court had no basis in federal law at all," plaintiffs could have brought all their claims in the federal court; "[t]hus, by not doing so, they were estopped from doing so later in State Court"); *Marrie v. Internatl. Local 717*, 11th Dist. No.2001-T-0046, 2002-Ohio-3148, ¶ 34 (observing, "[a]lthough appellant's former lawsuit was based on a violation of the ADA while the current lawsuit is based on a violation of R.C. Chapter 4112, these discrimination claims clearly arise out of the same facts and could have been litigated in the 1998 federal lawsuit pursuant to that court's supplemental jurisdiction"); V*aughn v.*

*Looney*, 9th Dist. No. 12985 (July 22, 1987) (holding, "[b]ecause [plaintiff] could have raised his state causes of action in the prior federal proceeding" but failed to do so, "*res judicata* bars his raising them in a subsequent proceeding"). (Emphasis sic.)

{¶ 28} By contrast, Dr. Saha did raise state law claims before the District Court, and the court explicitly declined to exercise jurisdiction over those claims. The Ninth District Court of Appeals recognized the significance of this distinction in its cases, *Deryck v. Akron City School Dist.*, 9th Dist. No. 13442 (Aug. 17, 1988); *Plazzo v. Nationwide Mut. Ins. Co.*, 9th Dist. No. 17022 (Feb. 14, 1996). In *Deryck*, the Ninth District found res judicata did not bar a plaintiff's subsequent state action where he had attempted to litigate his state law claim in his federal action but the federal court refused to exercise pendent jurisdiction over the claim. *Id.* The appellate court concluded, "[u]nder these circumstances, it would work an injustice on the [plaintiff] to bar the state claim in state court." *Id.* In *Plazzo*, the Ninth District distinguished the case then before it from *Deryck*, noting "[i]n *Deryck,* the plaintiff attempted to litigate his state law claim in his federal action," while the *Plazzo* plaintiff, "could have attempted to raise his state law claim in his previous federal lawsuit but failed to do so." *Plazzo*. Accordingly, the Ninth District held that res judicata applied to bar the plaintiff's subsequent state action in *Plazzo* where it had not applied in *Deryck*. *Id.*

{¶ 29} In *Johnson v. Cleveland City School District*, 8th Dist. No. 94214, 2011-Ohio-2778, ¶ 39, the Eighth District Court of Appeals likewise found "there was no final judgment on the merits in the federal action as to the state claims" where a prior federal court determination had resolved the plaintiff's federal claims on the merits, but declined to exercise pendent jurisdiction over her remaining state claims. As in the matter sub judice, the defendant contended that the plaintiff "was barred from re-litigating her claims in state court because of the federal court findings"; the appellate court, however, "disagree[d]." *Id.* at 35. Holding that a "state action is barred in subsequent suits" "[u]nless it is clear that the federal court would have declined as a matter of its discretion to exercise jurisdiction over the state claim," the court found the plaintiff's "claims were not barred by res judicata under the claim preclusion portion of the doctrine" because she "did assert her state claims in the federal action, and the federal court did specifically decline to exercise jurisdiction over them." *Id.* at ¶ 42-43, quoting *Lakewood,*

*Ohio Congregation of Jehovah's Witnesses, Inc. v. Lakewood*, 20 Ohio App.3d 338, 340 (1984), citing Restatement of Law 2d, Judgments, Illustration 1, Section 87 a, at 316 (1982).

{¶ 30} This court recognized the "well-established authority finding that a dismissal premised on a decision not to exercise supplemental jurisdiction does not constitute a final judgment on the merits so as to invoke the principles of *res judicata*" in *Bush v. Dictaphone Corp.*, 10th Dist. No. 98AP-585 (Mar. 30, 1999). *See also Painesville, Ohio v. First Montauk Fin. Corp.*, 178 F.R.D. 180, 185 (N.D.Ohio 1998) (holding "*Res judicata* does not apply if a court dismissed the first suit for want of jurisdiction, or was disposed of on any ground that did not go to the merits of action."), citing *Hughes v. U.S.*, 71 U.S. 232 (1866). Indeed, the *Bush* court even applied this principle to a plaintiff's subsequent state law claims where the federal court denied the motion for leave to amend setting forth the subject state law claims, but used language indicating its denial constituted "a dismissal on jurisdictional grounds." *Id.* Notably, in *Bush*, as in *Deryck* and *Johnson*, the federal court rendered a judgment on the merits as to the plaintiff's federal law claims.

{¶ 31} In the end, the District Court's judgment in Lawsuit II expressly dismissing Dr. Saha's state law claims without prejudice, after declining to exercise pendent jurisdiction over them, does not constitute a prior valid judgment on the merits. Nor does the court's holding dismissing Dr. Saha's federal law claims for failure to state a claim constitute a prior valid judgment on the merits as to his state law claims where the court addressed his state law claims separately. As a result, res judicata does not apply to bar Dr. Saha's state law claims that the District Court dismissed without prejudice.

{¶ 32} Nevertheless, the Institute contends, the matter sub judice "is distinguishable from a scenario where a plaintiff seeks to bring the *same* state law claims that were dismissed without prejudice by the federal court," because Dr. Saha did not include the present breach of contract claims with his other state law claims in Lawsuit II. (Emphasis sic; Appellee's brief, at 23-24.) The Institute asserts this court cannot "presume that, *if* [Dr. Saha] had presented a state law breach of contract claim in the federal lawsuit, the District Court *would have* inevitably dismissed it without prejudice." (Emphasis sic; Appellee's brief, at 25.)

{¶ 33} However, in declining to exercise its pendent jurisdiction over Dr. Saha's state law claims, the District Court explained that, "[h]aving dismissed his federal claims, the Court presumptively should not address the state law claims." *Saha*, case No. 2:05-cv-190, at 11.  The United States District Court cited the " 'strong presumption' in favor of dismissing any remaining state claims" when a federal court "has properly dismissed a plaintiff's federal claims" and the plaintiff cannot establish " 'an alternate basis for federal jurisdiction.' " *Id.*, quoting *Jackson* at 8.  Since "[Dr.] Saha ha[d] failed to suggest any justification or alternative basis for exercising jurisdiction over his state law claims" once his federal claims failed, "the Court in its discretion decline[d] to exercise its supplemental jurisdiction over Saha's remaining state law claims * * * and dismisse[d] said claims without prejudice." *Id.* at 11.

{¶ 34} The presumption invoked by the District Court in the matter sub judice is rooted in the idea, expressed by the U.S. Supreme Court in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966), that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *See also Deryck* (noting the federal court "is instructed to avoid deciding the state claims if it is unnecessary"), citing *United Mine Workers*. The *United Mine Workers*' court further held that, "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

{¶ 35} The United States District Court's resolution of Dr. Saha's state law claims against the Institute focused exclusively on this presumption against exercising its pendent jurisdiction over "any" state law claim where all federal claims had been resolved.  *Saha*, case No. 2:05-cv-190, at 11, quoting *Jackson*.  Nothing in the United States District Court's opinion indicates its decision was based on, or in any was influenced by, the nature of the particular state law claims asserted; notably, in dismissing without prejudice Dr. Saha's state law claims against the Institute, the District Court does not even name the individual causes of action, instead referring generally to "Saha's remaining state law claims." *Id.*  As discussed, Ohio appellate courts have held that the res judicata doctrine bars subsequent state law claims where the claims might have been litigated in a first lawsuit, but it does not bar subsequent state law claims where the

federal court clearly would have declined to exercise jurisdiction over those claims. *Natl. Amusements* at 62; *Johnson*, 2011-Ohio-2778, at ¶ 42. Here, by expressly stating that it declined jurisdiction based on the jurisprudence counseling against federal courts presiding over state law claims after all federal claims had been resolved, the District Court's language clearly indicates that the subject breach of contract claims would fall into the latter category. *Compare Watson v. Parma Community Gen. Hosp.*, 8th Dist. No. 86362, 2006-Ohio-712, ¶ 19 (holding there was "no way of knowing whether the federal court would have exercised its pendent jurisdiction" over subsequent state law claims where "the federal court did exercise pendent jurisdiction" over the sole state law claim brought before it).

{¶ 36} In sum, because the District Court dismissed Dr. Saha's state law claims without prejudice, there has not been a judgment on the merits as to those claims. Furthermore, because the District Court dismissed Dr. Saha's state law claims without prejudice based on the aforementioned desire to avoid an inappropriate exercise of pendent jurisdiction, Dr. Saha's breach of contract claims do not represent claims which he might have "actually litigated" in his federal case. Accordingly, res judicata does not operate to bar the present action, and the trial court erred in granting summary judgment in favor of the Institute. Dr. Saha's sole assignment of error is sustained.

## VI. Disposition

{¶ 37} Having sustained Dr. Saha's single assignment of error and overruled the Institute's cross-assignment of error, we reverse the decision of the Franklin County Court of Common Pleas and remand for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

TYACK and BROWN, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____