THOMAS, APPELLEE, *v.* THOMAS, APPELLANT.

(No. 985—Decided April 25, 1958.)

*Miss Mary F. Abel* and *Mr. George W. Cowles,* for appellee.
*Messrs. Zimmerman & Zimmerman,* for appellant.

MIDDLETON, P. J.   The plaintiff brings his action to establish a trust in certain real estate described in his amended petition. Upon trial, the court found in favor of the plaintiff, established the trust as prayed for, and held the plaintiff to be the owner of an undivided one-half interest in the described real estate.   The case is now in this court on appeal on questions of law and fact and is heard *de novo.*

M. C. Thomas, the father of both plaintiff and defendant, was, prior to the execution of the deed in question, the owner of a farm in Logan County, which is the subject of the present litigation.   The father died on July 16, 1953.   On February 17, 1951, the father executed to the defendant, G. Watson Thomas, a warranty deed to the real estate described in the amended petition, reserving to himself a life estate.   The deed, except for the reservation of a life estate, was absolute on its face.   Subsequent to the execution and delivery of the warranty deed to the defendant, the grantor, on December 13, 1952, executed a paper

writing addressed "to my sons Eugene Thomas and Watson Thomas." This paper writing reads as follows:

"West Liberty, Ohio,
"December 13, 1952.

"To my sons Eugene Thomas and Watson Thomas:

"As you know I have previously deeded my farm of approximately 87 acres in Monroe Township, Logan County, Ohio, to my son, Watson Thomas, to be effective upon my death, and for this consideration I want Watson to pay Eugene one half of the value of said farm, as his share.

"If you two boys cannot agree upon the price of the farm, you are to call on three disinterested parties to appraise the same and both of you are to abide by their decision.

"As you both also know the consideration for my deeding the farm to Watson was his agreement to pay Eugene one half of the value thereof upon my death.

"May God bless and keep both of you and yours,

"with all of my love,
"M. C. Thomas."

Neither the plaintiff nor the defendant knew of the execution of this instrument or of its existence until after the death of the grantor, at which time it was delivered to the plaintiff.

To support his claim that the deed was executed and accepted by the defendant impressed with a trust, the plaintiff testified on direct examination as follows:

"Q. Mr. Thomas, I will ask you whether or not sometime prior to February 17, 1951, at the residence of your father in Monroe Township, Logan County, Ohio, there was any conversation took place there between you, your father, your mother and your brother concerning that farm? A. There was.

"Q. Will you relate to the court what the conversation was as near as you can remember? A. I would say it was the summer of '50 on Sunday afternoon. Mother was alive and we were in the front room there, and she asked if I wanted the farm. They wanted I or my brother to have the farm. I told them I didn't want it. I had a farm down there and a home, and then they said, 'We will give you your share in money.' That was about the conversation."

On cross-examination, he testified as follows:

"Q. Did I understand you correctly that you thought this conversation with your father and mother and brother had been in the summer of '50? A. That is right, prior to mother's death.

"Q. When did she die? A. February 8, 1951. I may be off a day or two.

"Q. But approximately six months before? A. Four, five six—summer—early fall. It was warm weather yet.

"Q. At that time they asked if you wanted the farm and you said no. A. Asked me if I wanted it and I told them no.

"Q. And they said if your brother got it—A. They said I would have my share in money. I said that was perfectly satisfactory. I didn't want the farm.

"Q. At that time did Watson say anything? A. I don't recall any further conversation. Mother and father asked and I said I didn't want the farm. Mother was sick with cancer and they were trying to fix things. They were still living—mother and dad both.

"Q. You don't know of any agreement your brother may have had in 1941? A. No. Never heard of it. They asked me that summer if I wanted the farm which I told them he could have. They said then they wanted him to have it. He didn't have a farm.

"Q. You were to get your share in money? A. I trusted my father and there was nothing more discussed.

"Q. You wouldn't say any trust was made at that time? A. I don't know whether it was done at that time. I trusted my father.

"Q. You didn't hear any trust made? A. Other than I would get my share. At that time mother said you can have your share in cash."

Gladys Thomas, wife of plaintiff, was called as a witness for the plaintiff and testified on direct examination as follows:

"Q. Mrs. Thomas, directing your attention to a time sometime before February, 1951, I ask you whether or not you were present at the home of M. C. Thomas and in the presence of your husband Eugene, your mother-in-law, father-in-law, and the de-

fendant G. Watson Thomas, when a conversation took place with reference to division of property? A. Yes.

"Q. I will ask you, Mrs. Thomas, to tell the court what that conversation was as near as you can remember it? A. Well, they asked Gene if he was interested in the farm and he said no because we have a farm at North Lewisburg, which is mine, however, and he has a job with the state, and he said he didn't want the farm; that he would rather have the money, and then they said since Watson didn't have a home they would see he got the farm and Gene would get money."

Again, on cross-examination, Mrs. Thomas testified:

"Q. As I gather, Mrs. Thomas, the only discussion about the farm before Mrs. M. C. Thomas' death was in the summer of '50 that you just tesitfied about? A. Well, that was the main one.

"Q. At that time I understood you to say Mr. Thomas asked Gene if he wanted the farm and he said no, you had the farm. A. Yes.

"Q. And they then said at that time—did they say Watson would get the farm or Gene. A. Well, they said they wanted the farm to stay in the family, so they said since Watson didn't have a home he would take over the farm and Gene would get money."

The defendant, both on direct examination and cross-examination, denied there was any verbal agreement or understanding that on the death of the father he was to pay to his brother a sum equal to one-half of the value of the farm, or any other sum.

Except for the above-quoted testimony there is no evidence in the record of any declaration made by the father at the time of the execution and delivery of the deed to the defendant, or that any statement was made at that time to the effect that plaintiff was to have any interest in the real estate conveyed or that the deed was other than a conveyance of an absolute title of general warranty except for the reservation of a life estate to the grantor.

That parol evidence may be offered to engraft a trust upon land conveyed by a deed absolute upon its face has been upheld

by a long line of authorities and is not questioned by the parties to this action.

*Mathews and Wife* v. *Leaman and Wife,* 24 Ohio St., 615; *Broadrup* v. *Woodman,* 27 Ohio St., 553; *Harvey* v. *Gardner,* 41 Ohio St., 642; *Mannix, Assignee,* v. *Purcell,* 46 Ohio St., 102, 19 N. E., 572, 15 Am. St. Rep., 562, 2 L. R. A., 753; *Boughman* v. *Boughman,* 69 Ohio St., 273, 69 N. E., 430.

However, as stated in *Boughman* v. *Boughman, supra,* it is required that parol evidence by which it is sought to establish a trust must be clear and convincing. Judge Shauck in his opinion stated:

"* * * This is conformable to the general rule of equity that it will not, by any form of decree, upon mere suspicion or conjecture, abate the legal conclusiveness of a written instrument. Not only does the doctrine which plaintiffs below invoked make this requirement as to the probative character of the evidence to be by them produced, but it dispenses with none of the elements of a valid trust. To the creation of an express trust in lands in any mode it is indispensible that contemporaneously with the execution of the deed the beneficiary be designated and the terms and conditions of the trust declared. These doctrines are elementary, and they have been frequently explained and applied by this court."

The paper writing executed by the father more than a year and a half after the execution of the deed to the defendant has, in the opinion of the court, no probative value. It is in direct contradiction of the testimony of the plaintiff, as well as the testimony of the defendant. This instrument was written after the grantor remarried; the deed was executed prior to his remarriage.

Plaintiff's claim is that the defendant was to get the farm and the plaintiff was to be paid his share in cash. From what source the cash was to come, the record is silent. There is no claim made by the plaintiff in his testimony that the cash was to be paid by the defendant. At the time the deed was executed, so far as the record discloses, the grantor may have had other assets or, as far as the record discloses, may have had other assets at the time of his death, from which plaintiff was to be paid.

The burden rests upon the plaintiff to prove the engrafting of the trust upon the land deeded to the defendant, by clear, certain, and conclusive evidence, not only of the existence of the trust at the time of the conveyance, but also of its terms and conditions. *Harvey* v. *Gardner, supra* (41 Ohio St.), at page 646; *Hill* v. *Irons,* 160 Ohio St., 21, 113 N. E. (2d), 243.

This proof plaintiff has failed to furnish, and judgment must be entered against him and in favor of defendant.

*Judgment for defendant.*

YOUNGER and GUERNSEY, JJ., concur.