MARY J. BOYLE, P.J.:
{¶ 1} Plaintiff-appellant, Norman Millstein, appeals from a judgment of the Cuyahoga County Court of Common Pleas, Probate Division, granting summary judgment to defendants-appellees, Norman's son, Kevan Millstein, as trustee of the *677 Kevan Millstein Trust ("KMT") and the Al-Jo Trust ("AJT"), as well as the two trusts. Norman raises one assignment of error for our review:
The trial court erred by granting Defendant-Appellee Kevan Millstein's motion for summary judgment on claim one, for an accounting of the Kevan-Millstein Trust, and claim three, for an accounting of the Al-Jo Trust, of Plaintiff-Appellant Norman Millstein's Amended Complaint.
{¶ 2} Finding no merit to his appeal, we affirm.
I. Procedural History and Factual Background
{¶ 3} In his amended complaint filed in September 2014, Norman sought a "fiduciary accounting" of the KMT and AJT from 1997 to the present (Counts 1 and 3), and a declaratory judgment that Bernard Millstein (Norman's brother) had no power as a trust advisor under the KMT because his power was "illusory and void ab initio" (Count 2).
{¶ 4} Norman established two irrevocable gift trusts for the benefit of his children and their successors: the AJT in 1987 and the KMT in 1988. When he did so, he was the grantor and trustee of both trusts. In 1997, however, Norman transferred control of both trusts to Kevan when he resigned as trustee of the KMT and AJT and made Kevan the sole trustee of both trusts.[1]
{¶ 5} Norman alleged that Kevan's administration of the KMT was inconsistent with Norman's intentions that he made clear in a 1988 memorandum ("the 1988 memo"), which Norman authored when he was both the grantor and trustee of the KMT (although in a somewhat circular argument, Norman asserted that he had no recollection of writing or reading the 1988 memo and alleged that Kevan was using it against him). Norman claimed that Kevan had a fiduciary duty to consider Norman's intentions that were set forth in the memo, "including the prospect of offsetting income attributable to Norman, when making trust administration decisions."
{¶ 6} Norman further alleged in the complaint that both trusts "pass income to Norman," making it financially onerous to him. Norman asserted that he was entitled to a "fiduciary accounting" because he "has been saddled with millions of dollars of income tax liability" due to "the administration and activities" of the KMT. Norman further claimed that under the KMT, he was entitled to "at least annually a full financial report."
{¶ 7} In December 2014, Kevan moved for summary judgment on Norman's complaint, arguing that Norman was not entitled to a financial accounting of the trusts and that if he ever was entitled to an annual full financial report per the trusts, he had released that right when he entered into an agreement with Kevan in 2005. Kevan further argued that Norman's declaratory judgment claim regarding Bernard (Count 2) had no merit. In May 2015, the probate court agreed with Kevan's argument with respect to Bernard, namely, that Bernard had been a trust advisor for the KMT since its inception. Norman did not appeal this decision and, thus, Count 2 is not part of the present appeal.
*678 {¶ 8} Subsequently, Norman's attorney was disqualified from the case due to a conflict. Norman later obtained new counsel, who filed an opposition to Kevan's remaining arguments in his summary judgment motion that were related to Counts 1 and 3 of Norman's complaint. In August 2017, the probate court granted summary judgment to Kevan. It is from this judgment that Norman appeals.
II. Summary Judgment Standard
{¶ 9} We review an appeal from summary judgment under a de novo standard. Baiko v. Mays , 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs. , 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).
{¶ 10} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. State ex rel. Duganitz v. Ohio Adult Parole Auth. , 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).
{¶ 11} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. Dresher v. Burt , 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate, but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293, 662 N.E.2d 264.
III. Analysis
{¶ 12} In his sole assignment of error, Norman raises three issues regarding his argument that the trial court erred in granting summary judgment to Kevan.
A. Trust Provisions
{¶ 13} In his first issue, Norman argues that the "explicit, unambiguous terms of the KMT and AJT agreements provide that he is entitled to 'a full financial report of the trust assets at least annually.' " Kevan maintains that the trust provisions do no such thing.
{¶ 14} Interpreting a trust is akin to interpreting a contract. With both, the role of courts is "to ascertain and give effect to the intent of the parties." Arnott v. Arnott , 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 14, citing Saunders v. Mortensen , 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452. The construction of a written contract is a matter of law that we review de novo. Arnott at ¶ 23, citing Saunders . "The same is true of the construction of a written trust." Arnott at ¶ 14, citing In re Trust of Brooke , 82 Ohio St.3d 553, 697 N.E.2d 191 (1998).
{¶ 15} One of the fundamental tenets for the construction of a will or trust is to ascertain, within the bounds of law, the intent of the testator, grantor, or settlor. Domo v. McCarthy , 66 Ohio St.3d 312, 314, 612 N.E.2d 706 (1993). When the language in a trust is unambiguous, the grantor's intent can be determined from the express terms of the trust itself. Id. When a trust agreement is unambiguous, no judicial construction or interpretation is required unless the purpose of the trust is illegal or against public policy.
*679 Saunders at ¶ 9, citing Aultman Hosp. Assn. v. Community Mut. Ins. Co. , 46 Ohio St.3d 51, 544 N.E.2d 920 (1989).
{¶ 16} Both the KMT and AJT contain a provision entitled "Trustee's Duties and Powers" under the trust declarations. It provides:
Books of Account. The trustee shall keep full books of account showing the condition of the trust, which shall be open at all reasonable times to the inspection of the beneficiary of the trust. Furthermore, during [Norman's] lifetime, the trustee shall deliver to [Norman], at least once annually, a full financial report of the trust assets held hereunder.
{¶ 17} Norman argues that this provision under the Trust Declarations makes it "clear that the trust provisions of the Grantor Trusts require that [Kevan] provide [him] with an accounting of the Grantor Trusts." Norman contends that the accounting is a "full financial report," or the "Book of Account." Kevan counters that if Norman, the grantor, intended that he be entitled to a full accounting, the trust would have stated that the beneficiaries and the grantor are entitled to inspect the full books of account. We agree with Kevan.
{¶ 18} The Trust Declaration at issue makes a distinction between what the beneficiaries are entitled to and what Norman is entitled to. Under the trust, the beneficiaries are entitled to the "full books of account." Norman, on the other hand, is entitled to "a full financial report of the trust assets." A full financial report of the trust assets is not the same as the "full books of account showing the condition of the trust," which is what the beneficiaries are entitled to.
{¶ 19} R.C. 5808.13(C), which establishes the duty of a trustee to keep beneficiaries under the trust "reasonably informed about the administration of the trust," provides in part:
A trustee of a trust that has a fiscal year ending on or after January 1, 2007, shall send to the current beneficiaries, and to other beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, the trust assets' respective market values.
{¶ 20} Under this statute, the trustee owes a fiduciary duty to the beneficiaries of a trust, not to the grantor. Norman does not point to any other statute that mandates that a trustee owes a duty to the grantor.
{¶ 21} The official comment to R.C. 5808.13 states that "The Uniform Trust Code employs the term 'report' instead of 'accounting' in order to negate any inference that the report must be prepared in any particular format or with a high degree of formality." Kevan maintains that this comment "makes a clear distinction between the terms 'report' and 'accounting' and demonstrates that the requirement that a trustee provide a report is a lesser and dissimilar standard than is required of a trustee who is obligated to provide an accounting." We agree.
{¶ 22} In his complaint, Norman sought "a fiduciary accounting" of the trusts, not a "full financial report." Under the trust, Norman is entitled to "a full financial report of the trust assets." Norman is not entitled to a "fiduciary accounting" of the trusts, which would include not only trust assets but also details of the trust administration and liabilities as well.
{¶ 23} Kevan alternatively argued in his summary judgment motion that in *680 2005 (as well as in several other subsequent agreements), Norman signed an agreement and release of all claims (the "2005 Agreement"), current or future, against Kevan, individually and as trustee. Norman, Kevan, the trusts, businesses owned by the trusts, and Norman's other six children were all parties to the 2005 Agreement.
{¶ 24} The 2005 Agreement provided, inter alia, that Norman would receive (1) a substantial lump sum upon execution of the agreement and the remainder within 30 days of execution, (2) a monthly salary for the remainder of his life, (3) health insurance for life, (4) a condominium unit for his personal use in Florida or in any other location that he desires, (5) a monthly lease of a unit in the Hampton Apartments in Beachwood for life, and (5) a suite in Las Vegas.
{¶ 25} The 2005 Agreement stated that Norman acknowledged that Kevan "has had and continues to have the full authority and responsibility for the operation and control of all of the Millstein Legal Entities and agrees in the future to forego any right to contest such authority." Norman also "irrevocably and unconditionally" agreed to "release and discharge Kevan in his individual capacity and representative capacity for all claims and actions and covenanted not to sue him except with respect to a breach of the agreement."
{¶ 26} As evidenced by other documents attached to Kevan's summary judgment motion, Norman continued to demand and receive more benefits pursuant to additional agreements between the parties. As part of these additional agreements where Norman received more benefits, Norman continually agreed not to sue Kevan.
{¶ 27} After review, we agree with Kevan that Norman is prohibited from bringing any action against Kevan pursuant to the 2005 Agreement, as well as the additional agreements.
{¶ 28} Norman argues, however, that even under the 2005 Agreement, he is entitled to a full financial accounting of the trusts. He contends that because Kevan breached the 2005 Agreement by not providing him with this accounting, he is not prevented from bringing this lawsuit. We disagree. The 2005 Agreement provided that "[a]s they are prepared, there will be delivered to Norman Millstein all current monthly and annual operating and financial statements for all companies, trusts and other entities in which he was involved in as of the date of this Agreement and Release." But notably, as of the date of the release, Norman had not been "involved in" the trusts at issue in the case since 1997-when he transferred all control of the trusts to Kevan.
{¶ 29} Norman's first issue has no merit.
B. Federal Income Tax Law
{¶ 30} In his second issue, Norman contends that he is entitled to a "financial accounting" under federal tax law. He claims that Kevan should provide him with a financial accounting of the trust so that he, as the grantor, "has the requisite information to accurately, fully, and truthfully file his personal income tax returns."
{¶ 31} Norman cites to Treasury Regulation Section 1.671-4 in support of his argument that he is entitled to an accounting of the trusts. This provision provides in relevant part that the trustee has an "[o]bligation to furnish [a] statement" to "grantor or other person treated as the owner of the trust" that:
(i) Shows all items of income, deduction, and credit of the trust for the taxable year;
(ii) Provides the grantor or other person treated as the owner of the trust *681 with the information necessary to take the items into account in computing the grantor's or other person's taxable income; and
(iii) Informs the grantor or other person treated as the owner of the trust that the items of income, deduction and credit and other information shown on the statement must be included in computing the taxable income and credits of the grantor or other person on the income tax return of the grantor or other person.
{¶ 32} Kevan contends, however, that he has complied with the relevant tax regulations and has provided Norman with an annual grantor tax letter with the required information each year. Norman does not dispute this fact. Instead, Norman argues that he still needs a full accounting to "verify the accuracy of the annual tax information Kevan has provided to Norman."
{¶ 33} After review, however, we agree with Kevan that this provision does not give Norman the right to a full financial accounting of the trusts. Moreover, this court does not have jurisdiction over federal tax claims. If Norman truly believes that Kevan has not furnished him with the proper tax information, Norman should contact the Internal Revenue Service.
{¶ 34} Norman's second issue has no merit.
C. Equity
{¶ 35} In his final issue, Norman contends that under the principles of equity, Kevan should provide him with a financial accounting because Norman is the one responsible for paying the taxes. Norman, however, did not raise this issue below and, thus, we will not address it for the first time on appeal. See State v. Peagler , 76 Ohio St.3d 496, 499, 668 N.E.2d 489 (1996) ("Generally, an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.").
{¶ 36} Norman's third issue has no merit.
{¶ 37} After review, we overrule Norman's sole assignment of error because the three issues that he raises are without merit. Accordingly, we conclude that the trial court did not err when it granted summary judgment to Kevan because there are no genuine issues of material fact remaining in the case.
{¶ 38} Judgment affirmed.
SEAN C. GALLAGHER, J., and ANITA LASTER MAYS, J., CONCUR

Norman filed his original complaint in August 2014. After receiving the complaint, Kevan's attorney sent an 11-page letter to Norman demanding that the complaint be dismissed due to factual inaccuracies and that it "was not legally supportable." Norman subsequently filed his amended complaint, removing many of the original facts and claims.