[Cite as *Galavich v. Hales*, 2022-Ohio-1121.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

DENNIS N. GALAVICH,

Plaintiff-Appellant,

v.

CAROL HALES et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 BE 0033**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 2020 CV 230

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Kristopher O. Justice*, *Atty. Adam Schwendeman*, *Atty. Caroline A. Eversman*, Theisen Brock*,* 424 Second Street, Marietta, Ohio 45750, for Plaintiff-Appellant and

*Atty. Lee M. Grosscup*, Miller & Grosscup Law Firm, LLC, 3465 South Arlington Road, Ste. D, Akron, Ohio 44312, for Defendants-Appellees Carol Hales and

*Atty. Nicholas Schneckenburger,* Maguire Legal Group, LLC, 190 East Avenue, Tallmadge, Ohio 44278 for Estate of Bonnie G. Stetson.

Dated:  March 31, 2022

---

**Robb, J.**

**{¶1}**  Plaintiff-Appellant Dennis Galavich appeals the decision of the Belmont County Common Pleas Court granting summary judgment for Defendants-Appellees Carol Hales and the Estate of Bonnie Stetson.  Two issues are raised in this appeal.  First, is whether a trust for the Appellant's benefit was created.  The second issue is whether any of the defenses raised prevented him from collecting as beneficiary of the trust.

**{¶2}**  For the reasons expressed below, we affirm the decision of the trial court.  The evidence indicates an express trust was created.  However, Appellant failed to disclose to the Bankruptcy Court that the property was being held for him.  Accordingly, the doctrine of judicial estoppel is applicable and prevents Appellant from now claiming the property was being held for him.

Statement of the Facts and Case

**{¶3}**  Carol Galavich owned 172.713 acres in Belmont County, Ohio (Galavich Farm).  This farm had been in the family for approximately 150 years.  In March 2011, Carol Galavich was diagnosed with pancreatic cancer.  At that time her son, Appellant Dennis Galavich was living with her; he was having some financial problems and was contemplating filing for bankruptcy.

**{¶4}**  Carol Galavich contacted Attorney Richard Yoss while she was in the hospital to discuss end of life decisions for her estate.  Attorney Yoss visited Carol in the hospital and they discussed the option of creating a trust.  Attorney Yoss's deposition testimony indicated Carol wanted Dennis to have the farm, but due to his financial problems she wanted to protect the farm from his creditors.  He described the conversation as he remembered it, stating that Carol wanted Bonnie Stetson to hold the property for Dennis and then give it to him when his financial issues were resolved.  Yoss Depo. 31-33.  However, she did not want to execute a complicated 10-15 page trust document.  Yoss Depo. 31-33.  He indicated Carol kept saying she trusted Bonnie.  He told her they should at the least make it clear to the world that she was not gifting the

property to Bonnie and to add the word trustee behind Bonnie's name. Yoss Depo. 31-33. Carol then agreed indicating she was not gifting it to Bonnie, she just wanted her to hold it until Dennis resolved his financial troubles. Yoss Depo. 31-33. This meeting resulted in a letter drafted by Attorney Yoss and signed by Bonnie. The letter stated:

> As you know, Carol Galavich is in the hospital and remains concerned about her son Dennis and his finances. Because of this, I believe she has talked with you about signing an Affidavit which would transfer certain property to you upon her death. This transfer would be to you as Trustee with the understanding that should Carol die you would ultimately transfer this property to Dennis once his financial problems were taken care of.

> This is an unusual situation, but Carol trusts you and tells me that you understand and are agreeable to this. If that is the case, I would ask that you sign the original of this letter at the space below and return the same to me in the enclosed self-addressed envelope.

5/3/11 Document.

{¶5}    This document was signed by Bonnie Stetson and was in Attorney Yoss' file. In addition to the letter, a Transfer on Death Designation Affidavit was executed by Carol regarding the Galavich farm. The name of the beneficiary on this document was Bonnie Stetson, Trustee. It was signed by Carol Galavich. 5/25/11 Transfer on Death Designation Affidavit.

{¶6}    Carol Galavich died on July 7, 2011. An Affidavit for Transfer on Death signed by Bonnie as trustee was recorded September 19, 2011. Also recorded on that same date was a Transfer on Death Designation Affidavit by "Bonnie Stetson, Trustee," for the Galavich Farm and named Dennis Galavich as the beneficiary. 9/19/11 Transfer on Death Designation Affidavit.

{¶7}    Less than a week prior to Carol's death, Dennis filed for bankruptcy. 7/1/11 Bankruptcy Petition.

{¶8}    Dennis proceeded through bankruptcy. At no point during the bankruptcy proceedings did Dennis indicate to the bankruptcy court that he was the beneficiary of a

trust or that property was being held for his benefit. His bankruptcy proceedings indicated he was disinherited by his mother, Carol.

**{¶9}** At the end of 2012, Dennis' bankruptcy was completed. In 2013, Dennis asked for Bonnie to transfer the house he lived in and had lived in with his mother. Dennis' deposition testimony indicated that he knew Bonnie and kept in touch with her for years following the death of his mother. Bonnie, as trustee, conveyed the house and approximately 1 acre to Dennis. This property was a part of the Galavich farm. Bonnie signed the warranty deed as trustee. 9/26/13 Warranty Deed.

**{¶10}** Bonnie signed other documents as trustee. She conveyed land to Mountain Gathering, LLC for a pipeline on the Galavich Farm. That document indicated the transfer was done in her individual and trustee capacity. 4/24/14 Special Warranty Deed. However, she signed the Special Warranty Deed as trustee. 4/24/14 Special Warranty Deed. In 2019, Bonnie executed a new Transfer on Death Designation Affidavit naming Carol Hales as the beneficiary of the Galavich Farm. This document indicated Bonnie was trustee. 5/2/19 Transfer on Death Designation Affidavit.

**{¶11}** Bonnie entered into contracts for the minerals to the Galavich Farm, some as trustee. In many of those leases, she signed solely in her individual capacity and nowhere in the lease did it indicate she was trustee.

**{¶12}** Bonnie died April 5, 2020. At the time of her death, the Transfer on Death Designation Affidavit naming Carol Hales as the beneficiary of the Galavich Farm was still in effect. Carol Hales had taken care of Bonnie in the years leading up to Bonnie's death. An Affidavit of Confirmation of Transfer on Death was filed May 1, 2020.

**{¶13}** Dennis became aware of the transfer to Carol Hales after Bonnie's death and filed an action in September 2021. This complaint named Carol Hales, the Estate of Bonnie Stetson, and numerous oil and gas companies as defendants. He asserted claims sounding in breach of trust, quiet title, breach of fiduciary relationship, trespass and conversion. 9/30/21 Complaint; 11/9/20 First Amended Complaint. Hales and the Estate of Bonnie Stetson filed answers asserting defenses of laches, estoppel, unclean hands, and waiver. 10/29/20 Carol Hales Answer; 10/29/20 Answer of Estate of Bonnie Stetson; 11/20/20 Answer of Estate of Bonnie Stetson to First Amended Complaint; 11/20/20 Answer of Carol Hales to First Amended Complaint. The oil and gas companies also filed

answers, counterclaims, and/or motions to dismiss. 12/8/20 Answer of Defense Strike Force East, LCC; 12/8/20 Answer of South Central Power Company; 12/9/20 Answer of Summit Midstream Utica, LLC; 12/10/20 Answer of Mountain Gathering; 12/14/20 Defendant Ascent Resources Answer to First Amended Complaint; 12/15/20 Defendant Monbel Motion to Dismiss; 12/30/20 Answer of Defendant CNX Gas Co.

**{¶14}** In response to the counterclaims and Motion to Dismiss, Appellant filed answers and opposition motions. 1/8/21 Answer to Strike Force Counterclaim and Summit Midstream Counterclaim; 1/14/21 Plaintiff Motion in Opposition to Motion to Dismiss.

**{¶15}** Thereafter, Motions for Summary Judgment by the oil and gas companies were filed. 2/18/21 XTO Motion for Summary Judgment; 2/25/21 CNX Gas Joinder to Motion for Summary Judgment; 2/25/21 Utica Motion for Summary Judgment; 2/25/21 Strike Force Motion for Summary Judgment; 3/3/21 Ascent Motion for Partial Summary Judgment.

**{¶16}** Appellant then filed a Motion in Opposition to the above summary judgment motions. 3/5/21 Galavich Motion in Opposition to Summary Judgment Motions.

**{¶17}** The trial court granted summary judgment for Strike Force East, LLC, Summit Midstream Utica, LLC, CNX Gas Co., XTO Energy and Mountain Gathering. It also granted Strike Force's Motion for Judgment on pleadings and Ascent Resources – Utica, LLC's Motion for Partial Summary Judgment. 3/1/21 J.E.

**{¶18}** Hales filed a Motion for Summary Judgment arguing there was no trust and even if there was, judicial estoppel and/or laches prevented the trust from being effective. 5/25/21 Hales Motion for Summary Judgment. Specifically, as to judicial estoppel, Hales asserted Appellant could not take a contrary position in bankruptcy proceedings and also claim in the trial court that a trust exists where he is the beneficiary.

**{¶19}** Attached to the Motion for Summary Judgment was an affidavit from Heidi Kemp, Attorney for Bonnie Stetson. In this affidavit Attorney Kemp indicated that Bonnie contacted her to execute an affidavit of transfer on death. Given the recorded documents, Attorney Kemp contacted Ms. Stetson to inquire as to the existence of a trust. Bonnie informed Attorney Kemp no trust was in existence and never was. Bonnie said she intended to create one but never did. Based on the conversation Attorney Kemp was

under the belief and impression that any potential trust Bonnie and she discussed was a trust created by Bonnie for her own benefit.  5/25/21 Heidi Kemp Affidavit.

**{¶20}** The Estate of Bonnie Stetson also filed a motion for summary judgment arguing there is no evidence of trust, no express oral trust, no implied trust, no resulting trust, and no constructive trust.  The estate asserted defenses of judicial estoppel, laches, statute of limitations, and unclean hands.  5/27/21 Estate of Bonnie Stetson Motion for Summary Judgment.

**{¶21}** Appellant then filed a Motion for Partial Summary Judgment asserting an express trust was created and if it was not, a constructive trust was created.  He also argued Bonnie breached the duties of the trust.  6/7/21 Plaintiff Motion for Partial Summary Judgment.

**{¶22}** The parties filed responses to each other's Motions for Summary Judgment. 6/9/21 Response of Estate to Plaintiff's Motion for Summary Judgment; 6/11/21 Hales response to Plaintiff's Motion for Summary Judgment; 6/16/21 Plaintiff's Response to Estate's Summary Judgment Motion; 6/18/21 Plaintiff's Response to Hales' Summary Judgment Motion; 6/18/21 Plaintiff's Combined response to Hales and Estate Motions for Summary Judgment; 6/22/21 Hales' Memo in support of her Reply to Plaintiff's response; 6/22/21 Estate's Reply to Combined Answer.

**{¶23}** A hearing was held on the motions.  6/23/21 Tr.  The trial court granted summary judgment for Hales and the Estate of Bonnie Stetson.  6/24/21 J.E.  Appellant filed a timely appeal arguing summary judgment should not have been granted for Carol Hales and the Estate.  7/20/21 Notice of Appeal.  Appellant did not appeal the grant of summary judgment for the oil and gas companies.

First and Second Assignments of Error

"The trial court erred in granting summary judgment in favor of Carol Hales and the Estate of Bonnie G. Stetson, aka Bonnie Stetson, aka Bonita Stetson, deceased."

"The trial court erred in denying summary judgment in favor of Dennis N. Galavich."

**{¶24}** The two assignments of error are related and will be addressed together.

**{¶25}** The trial court granted summary judgment for Appellees.  We review an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105; 671 N.E.2d 241 (1996).  Pursuant to Civil Rule 56(C), summary judgment is proper

if: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *State ex rel. Whittaker v. Lucas County Prosecutor's Office*, 164 Ohio St.3d 151, 2021-Ohio-1241, 172 N.E.3d 143, ¶ 8; *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47 (1978).

**{¶26}** The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civil Rule 56(C). *Id.* at 292-293. If the moving party satisfies this burden, then the non-moving party has the reciprocal burden to demonstrate a genuine issue for trial remains. *Id.* at 293.

**{¶27}** Appellant asserts it is difficult to pinpoint error in the trial court's reasoning because it did not provide any written explanation. However, he contends Appellees' summary judgment motions should have been denied because in simple terms an express trust, resulting trust, or constructive trust was created and there is no defense that negates his ability to collect under the trust. Appellees' counter, arguing no trust was created because the evidence indicates there was no intent to create a trust and even if there is a genuine issue of material fact as to whether a trust was created judicial estoppel and/or the statute of limitations prevent Appellant from claiming the alleged trust exists.

**{¶28}** Given the arguments, our analysis will address them separately. The issue of whether a trust was created will be addressed first and the defenses will be addressed second.

### A. Trust

**{¶29}** Appellant asserts the evidence indicates Carol Galavich created an express trust to hold the Galavich Farm for his benefit. He argues even if an express trust was not created, at a minimum, a constructive or resulting trust was created. Appellees contend the evidence indicates there was no intention to create a trust and thus, a trust was not created. They further claim neither a constructive or resulting trust was created.

{¶30} In general, a "trust" is defined as "the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another." *KeyBank N.A. v. Firestone*, 2019-Ohio-2910, 140 N.E.3d 1019, ¶ 15 (8th Dist.), citing *In re Guardianship of Lombardo*, 86 Ohio St.3d 600, 603, 716 N.E.2d 189 (1999), quoting *Ulmer v. Fulton*, 129 Ohio St. 323, 339, 195 N.E. 557 (1935). There are two types of trusts, express and implied. *Brate v. Hurt*, 174 Ohio App.3d 101, 2007-Ohio-6571, 880 N.E.2d 980, ¶ 25 (12th Dist.); *Lawrence v. Bailey*, 3d Dist. Marion No. 9-99-37, 2000 WL 51803 (Jan 25, 2000).

## 1. Express Trust

{¶31} "An express trust arises by reason of a manifested intention to create it. Constructive trusts are imposed irrespective of intention." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 172, 297 N.E.2d 113 (1973). *See also* 91 Ohio Jurisprudence 3d, Trusts, Section 5 ("Express trusts are those intentionally created by the direct and positive act of the settlor by some writing, deed, will, or oral declaration, and are distinguishable from the implied trusts or trusts by operation of law, resulting and constructive, in that resulting trusts are founded upon the intention, implied in law, of the parties to the transaction, and constructive trusts are founded upon fraud or wrongdoing irrespective of the intention of the parties concerned."). The manifested intent can be either written or oral. *Hudson Presbyterian Church v. Eastminster Presbytery,* 9th Dist. Summit No. 24279, 2009–Ohio–446, ¶ 24. For an express trust to exist "there must be an explicit declaration of trust, or circumstances which show beyond a reasonable doubt that a trust was intended to be created, accompanied with an intention to create a trust, followed by an actual conveyance or transfer of lawful, definite property or estate or interest, made by a person capable of making a transfer thereof, for a definite term, vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a cestui que trust or purpose to which the trust fund is to be applied; or a retention of title by the owner under circumstances which clearly and unequivocally disclose an intent to hold for the use of another." *Ulmer v. Fulton*, 129 Ohio St. 323, 339-340, 195 N.E. 557 (1935), quoting 65 Corpus Juris, 231, § 21. *See also* 91 Ohio Jurisprudence 3d, Trusts, Section 49 ("Under Ohio law, four requirements are necessary to establish existence of an express or technical trust: (1) an intent to create trust; (2) a trustee; (3) a trust res; and (4) a definite

beneficiary. An express trust is created by the act, consent, and mutual understanding of the parties. To constitute an express trust, there must be an explicit declaration of trust or circumstances which show beyond reasonable doubt that a trust was intended to be created and that it was made by a person capable of making a transfer.").

**{¶32}** The court's primary duty in construing the provisions of a trust is to ascertain, within the bounds of the law, the intent of the settlor. *In re Trust U/W of Brooke*, 82 Ohio St.3d 553, 557, 697 N.E.2d 191 (1998). The parameters of a trustee's authority are controlled by the specific terms of the trust. *In re Trust U/W of Brooke*, 82 Ohio St.3d 553, 557, 697 N.E.2d 191 (1998). Interpreting a trust is akin to interpreting a contract. *Millstein v. Millstein*, 2018-Ohio-1204, 110 N.E.3d 674, ¶ 14 (8th Dist.). If the language of the trust agreement is unambiguous, the settlor's intent can be determined from the trust's express language. *Pack v. Osborn*, 117 Ohio St.3d 14, 2008-Ohio-90, 881 N.E.2d 237, ¶ 8. "The words in the trust are presumed to be used according to their common, ordinary meaning." *Id.* In interpreting the terms of a trust, a settlor's intent is determined by considering the language used in the trust, reading all the provisions of the trust together and "in light of the applicable law, and circumstances surrounding the [trust's] execution." *Cent. Trust Co. of N. Ohio, N.A. v. Smith*, 50 Ohio St.3d 133, 553 N.E.2d 265 (1990); *Mumma v. Huntington Natl. Bank of Columbus*, 9 Ohio App.2d 166, 223 N.E.2d 621 (10th Dist.1967). If the terms of a trust are found to be ambiguous, extrinsic evidence can be admitted to interpret the trust provisions. *Robinson v. Beck*, 9th Dist. Summit No. 21094, 2003-Ohio-1286, ¶ 10.

**{¶33}** The existence of a trust must be shown by clear and convincing evidence. *Gertz v. Dorley,* 63 Ohio App.3d 235, 237, 578 N.E.2d 534 (9th Dist.1989). The burden is on the proponent of the trust to prove the existence, terms, and conditions of the trust. *Thomas v. Thomas,* 108 Ohio App. 193, 198, 161 N.E.2d 416 (3d Dist.1958), citing *Harvey v. Gardner,* 41 Ohio St. 642, 646 (1885).

**{¶34}** The first question to answer is whether there was an intent by Carol Galavich to create a trust. Attorney Yoss, her attorney, was deposed. As to Carol Galavich's intent for the Galavich Farm, he avowed:

> So we talked about that. This is – this is when she started to talk to me about
> Bonnie Stetson, because you can see from her note here she talked about

Case No. 21 BE 0033

making it a TOD to her. Now this is the best I can remember. I said, "Carol, look, I'm not going to live forever. You're not going to live forever. Bonnie may not live forever. You're telling me you just want to transfer to her with the understanding she will do what she promised you she will do?" She said, "I think that." She said, "What else can I do?"

I said, "Well, let me do at least something so there's some record to show that you didn't just give this farm to Bonnie, period." She said, "How can I do that?" I said, "Well, we can draw up at 10- or 12- page trust agreement or something." She said, "I trust her." I said, "I know you do." She told me that probably 10 times, "I trust Bonnie." I said, "I don't know Bonnie."

So being the untrusting person that I am, "If you want to TOD this to her, then I want it to be done with something that gives the world notice that it's not really hers." "Absolutely." We discussed – I said, "Let me at least put the word 'trustee' after her name because otherwise she could argue, or her heirs if she dies, that's hers."

Yoss Depo. 31-32.

**{¶35}** During his testimony he acknowledged that Carol Galavich indicated she did not want to do a 10-to-12-page trust document. Yoss Depo. 32. She indicated she trusted Bonnie. Yoss Depo 32. Attorney Yoss suggested that at the very least let him do something to make it clear to the world that she was not gifting the property to Bonnie. Yoss Depo 32. He indicated that Carol's response was, "Well, that's right, because that's not why I'm doing it. I'm letting her hold it until Dennis gets out of his difficulties, okay?" Yoss Depo 33. He told her that the very least he could do was to add the term trustee to Bonnie's name and draft a letter for her to sign, which was what he did. Yoss Depo. 33.

**{¶36}** The letter he drafted to Bonnie Stetson states:

Dear Ms. Stetson:

As you know, Carol Galavich is in the hospital and remains concerned about her son Dennis and his finances. Because of this, I believe she has talked to you about signing an Affidavit which would transfer certain property to you upon her death. This transfer would be to you as Trustee with the

understanding that should Carol die you would ultimately transfer this property to Dennis once his financial problems were taken care of.

This is an unusual situation, but Carol trusts you and tells me that you understand and are agreeable to this. If that is the case, I would ask that you sign the original of this letter at the space below and return the same to me in the enclosed self-addressed envelope.

5/3/11 Letter.

{¶37} Bonnie signed this letter and it was delivered to Attorney Yoss.

{¶38} On May 20, 2011, within two weeks of the date of this letter, Carol's Transfer on Death Designation of the Galavich Farm to Bonnie was notarized. It was recorded on May 25, 2011. The Transfer on Death Designation named Bonnie as the trustee.

{¶39} Carol Galavich died on July 7, 2011. The Affidavit for Transfer on Death was recorded on September 19, 2011. This affidavit lists Bonnie as trustee in separate places and she signed the document on the line stating, "Bonnie Stetson, Trustee." Bonnie also executed a Transfer on Death Designation naming Dennis as beneficiary to the Galavich Farm on September 12, 2011. That document was recorded September 19, 2011.

{¶40} In addition to the above documents, Bonnie signed a Special Warranty Deed as well as leases and contracts with oil and gas companies in her capacity as trustee. Furthermore, after Dennis' bankruptcy concluded and he wanted the farmhouse and approximately one acre of land to sell so he could move from the area, he asked Bonnie to transfer that land to him. She transferred that land to him by warranty deed in her capacity as trustee.

{¶41} All of these actions show there was an intent for the creation of a trust and an express trust was created. The letter drafted by Attorney Yoss, signed by Bonnie, and naming Bonnie as trustee for the beneficiary in a Transfer on Death Designation, demonstrates a clear intent on Carol's part to create a trust. The letter, while not lengthy, contains the basics for a trust and contains an intent to create a trust. Her clear statements to Attorney Yoss and the statements in the letter signed by Bonnie make it clear Carol did not want to gift the property to Bonnie. Rather, she wanted Bonnie to hold the property for Dennis' benefit until his financial problems were resolved and then she

was to transfer the property to Dennis. Furthermore, Bonnie's actions clearly indicate she was under the belief there was an intent on Carol's part to create a trust. Bonnie's actions following Carol's death were those of a trustee. Bonnie immediately executed a Transfer on Death Designation naming Dennis the beneficiary. She signed that document in her capacity as trustee. Furthermore, Bonnie gave the farmhouse and one acre of land to Dennis when he asked. Had there been no trust she could have said no. But she did not. Instead, she gave the property to him in her capacity as trustee. Likewise, she signed legal documents such as a Special Warranty Deed and various oil and gas leases, in her capacity as trustee. Admittedly, she did not sign all documents in that capacity. However, the overwhelming evidence, especially in the years immediately following Carol's death, show Bonnie acting in conformity to what the letter asked her to do – be trustee of the Galavich farm and hold it for Dennis' benefit until his financial issue were resolved.

**{¶42}** Next, the trust must also indicate the beneficiary. "[T]he one for whose benefit the trust is created is called the cestui que trust, or beneficiary." *Ulmer* at 339. A trust fails where the beneficiaries are not ascertainable. *Moskowitz v. Federman,* 72 Ohio App. 149, 156, 51 N.E.2d 48 (9th Dist.1943). Here, it is ascertainable that Dennis is the intended beneficiary. The letter specifically indicates Bonnie is to hold the property for Dennis and that once his financial problems are taken care of, the property is to be transferred to Dennis. That statement is clear.

**{¶43}** Lastly, the trust must have a trust res; there must be a conveyance or transfer to the trust. The letter drafted by Attorney Yoss for Carol and signed by Bonnie states "certain property" would be in the trust. Attorney Yoss testified this certain property was the Galavich Farm. He testified that "Bonnie and Carol, according to Carol, had already discussed this and it was all about the farm, period." Yoss Depo 51. Furthermore, the TOD executed by Carol for the benefit of Bonnie as trustee within weeks after this letter was signed by Bonnie was for the Galavich Farm. Bonnie also, following Carol's death, executed a TOD naming Dennis as beneficiary for the Galavich Farm, carrying out the beneficiary designation of Carol. Despite Appellees' contention that the letter does not indicate to what property this letter applies, the evidence clearly indicated the Galavich Farm was the trust res.

Case No. 21 BE 0033

**{¶44}** Consequently, considering all the above, we conclude an express trust was created. Finding there was an express trust, we will not address any arguments concerning the creation of an implied trust.

### B. Affirmative Defenses

**{¶45}** Holding that a trust was created, we now must address the defenses. Appellees argue even if a trust was established, the trust cannot stand for a number of reasons. They argued judicial estoppel prevented the trust from standing because in the bankruptcy proceedings, Appellant indicated he was disinherited and was not receiving anything from Carol Galavich. He did not disclose the property was being held for his benefit. They also assert the trust was created for an illegal purpose, which was to defraud Appellant's creditors in the bankruptcy. Appellee Carol Hales additionally argues the doctrine of laches applies.

### 1. Judicial Estoppel

**{¶46}** The doctrine of judicial estoppel "precludes a party from assuming a position in a legal proceeding inconsistent with a position taken in a prior action." *Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill & Ritter, L.P.A.*, 148 Ohio App.3d 440, 2002-Ohio-3328, 773 N.E.2d 1081, ¶ 37 (10th Dist.), citing *Bruck Mfg. Co. v. Mason*, 84 Ohio App.3d 398, 616 N.E.2d 1168 (8th Dist.1992). In order to apply the doctrine of judicial estoppel, the proponent must show that his opponent "(1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25. The purpose of judicial estoppel is to preserve the integrity of the courts by preventing a party from abusing the judicial process. *Id.*

**{¶47}** Appellant contends this doctrine is inapplicable to the case at hand because he was under no duty to disclose that he was a beneficiary of a trust. Appellees primarily contend judicial estoppel applies because of Appellant's statement that he was disinherited and was not receiving anything from Carol Galavich, contrary to the position he is now taking that he is the beneficiary of a valid trust for the Galavich Farm. Secondly, they assert he was required to disclose that the property was being held for him and he did not disclose that information.

{¶48} Admittedly, when the bankruptcy petition was filed Carol Galavich was still alive and he had no interest in the property; Bonnie was designated as the transfer on death beneficiary at that time. However, after she died, he did not update the petition to indicate the property was being held for his benefit.

{¶49} A motion was filed in bankruptcy court for turnover of inheritance. Appellant opposed the motion. 9/20/12 Motion in Opposition of Trustee's Motion for Turnover of Inheritance. He claimed he was disinherited before her death. 9/20/12 Motion in Opposition of Trustee's Motion for Turnover of Inheritance. During his deposition he explained that he meant this in layman's terms – he was claiming he did not receive anything from Carol Galavich's estate, not that he was legally disinherited. Dennis Galavich Depo. 68.

{¶50} In bankruptcy proceedings, "[a] debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court." *Chrysler Group, L.L.C. v. Dixon*, 8th Dist. Cuyahoga No. 104628, 2017-Ohio-1161, ¶ 17, 18, citing 11 U.S.C. 521, 541(A)(7). "[T]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court." *Id.* at ¶ 26, quoting *Tennyson v. Challenge Realty (In re Tennyson)*, 313 B.R. 402 (Bankr.W.D.Ky.2004).

{¶51} That continuing duty is often discussed in cases involving the failing to disclose a cause of action as an asset on the bankruptcy petition. *Moore v. Hodge*, 1st Dist. Hamilton No. C-180633, 2019-Ohio-4752, ¶ 9-10 ("A cause of action is an asset that must be scheduled" under federal bankruptcy law. *Chrysler Group* at ¶ 17.). In that context it has been explained:

The rationale for * * * decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the

plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Rosenheim v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y.1996)*.*

**{¶52}** The First Appellate District has explained, "judicial estoppel is not appropriate when a debtor's failure to disclose a claim in a prior bankruptcy proceeding is inadvertent" or due to a "mistake." *Moore v. Hodge*, 1st Dist. Hamilton No. C-180633, 2019-Ohio-4752, ¶ 12, quoting *Saha v. Research Inst. At Nationwide Children's Hosp.*, 10th Dist. Franklin No. 12AP-590, 2013-Ohio-4203, ¶ 16. "A motive to conceal claims from the bankruptcy court always exists as a matter of law, since 'it is always in a Chapter 13 petitioner's interest to minimize income and assets.'" *Id.* at ¶ 14 quoting *Saha* at ¶ 19. However, an omission may be deemed inadvertent where the debtor lacked knowledge of the factual basis of the undisclosed claims, had no motive for concealment, and the evidence supports an absence of bad faith. *Id.* at ¶ 12, citing *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir.2010). The "absence of bad faith" inquiry focuses on affirmative actions taken by the debtor to notify the bankruptcy court of the claims. *Id.* at ¶ 15, citing *Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir.2012) (declining to apply judicial estoppel where trustee's affidavits acknowledging awareness of suit presented a factual dispute regarding whether the debtor's omission was in bad faith); *Eubanks v. CBSK Fin. Group., Inc.*, 385 F.3d 894, 895-897 (6th Cir.2004) (declining to apply judicial estoppel where evidence showed that debtor notified trustee of claim, asked trustee to pursue the claim on behalf of the estate, moved for a status conference on the claim, and moved to substitute the trustee as plaintiff in the suit).

**{¶53}** Thus, we must determine whether the statement about being disinherited is contrary to his claim that he is the beneficiary of a valid trust.

**{¶54}** Appellees cite to the two provisions in the schedules attached to the bankruptcy petition to indicate Appellant was required to disclose them and by indicating he was disinherited, when asked about Carol Galavich's estate, was a contrary position.

**{¶55}** The provisions in the bankruptcy petition relied on by Appellees state:

Schedule A – Real Property

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit.

Bankruptcy Petition.

{¶56} Appellant is correct he did not have a contingent or noncontingent interest in the trust at the commencement of the bankruptcy because his mother was still alive and there was no property in the trust. Rather, she executed a TOD designation to Bonnie Stetson, trustee, and asked Bonnie to hold the property as a trustee for Appellant's benefit. Pursuant to R.C. 5302.23(B)(4), "[t]he designation of a transfer on death beneficiary has no effect on the present ownership of real property, and a person designated as a transfer on death beneficiary has no interest in the real property until the death of the owner of the interest." Therefore, he had no interest at the time the bankruptcy was filed. However, after her death, he had a contingent or noncontingent interest in the property.

{¶57} Furthermore, as Appellees suggest, 11 U.S. Code 541(a)(1)(5) required Appellant to inform the bankruptcy court of the trust. That provision indicates if property is acquired by bequest, devise or inheritance within 180 days of the filing of the bankruptcy petition, the property is considered part of the bankruptcy estate. This property was transferred on death to Bonnie within 180 days of the filing of the bankruptcy, as was Bonnie's TOD naming Appellant beneficiary. They then assert Federal Bankruptcy Rule 1007(h) requires disclosure of the trust. That provision states:

(h) **Interests acquired or arising after petition**

If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case. If any

Case No. 21 BE 0033

of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. The duty to file a supplemental schedule in accordance with this subdivision continues notwithstanding the closing of the case, except that the schedule need not be filed in a chapter 11, chapter 12, or chapter 13 case with respect to property acquired after entry of the order confirming a chapter 11 plan or discharging the debtor in a chapter 12 or chapter 13 case.

Fed.R.Bankr.P. 1007(h).

{¶58} The evidence indicates Appellant knew of the letter claiming to create the trust about two months after Carol Galavich passed away. Dennis Galavich Depo. 32. Appellant testified Attorney Yoss explained the trust had been set up. Dennis Galavich Depo 32. Thus, there was knowledge of the trust.

{¶59} As the Seventh Circuit has noted, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [section] 541." *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996) (internal quotation and citation omitted). "Section 541 wields a broad scope and includes 'every conceivable interest of the debtor' as property of the estate." *In re GYPC, INC.*, Bankr. S.D. Ohio No. 17-31030, 2021 WL 5561016, citing *Church Joint Venture, L.P. v. Blasingame*, 986 F.3d 633, 638 (6th Cir. 2021), quoting *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013). Courts recognize that even though "federal law determines whether a debtor's interest in property is property of the bankruptcy estate, rights and property interests are created and defined by state law." *In re Gonzalez*, 559 B.R. at 330, citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Whether it is bankruptcy property is a decision for the bankruptcy court to decide. However, it did not get to make that decision in this case because the interest was not disclosed to the bankruptcy court.

{¶60} Regardless, the fact remains the property was being held for his benefit. Given the above provisions and the purposes of bankruptcy court updates, he was required to disclose this but did not. He stated to the bankruptcy court that he was disinherited. Regardless of how he meant the word disinherit, the fact remains he claimed

to the bankruptcy court he was going to get nothing, but failed to indicate property was being held for his benefit.

**{¶61}** Thus, judicial estoppel is applicable, unless it was a mistake or inadvertence to update. As stated above, "[a] motive to conceal claims from the bankruptcy court always exists as a matter of law." *Moore v. Hodge*, 1st Dist. Hamilton No. C-180633, 2019-Ohio-4752, ¶ 14. However, an omission may be deemed inadvertent where the debtor lacked knowledge of the factual basis of the undisclosed claims, had no motive for concealment, and the evidence supports an absence of bad faith. *Id.* at ¶ 12.

**{¶62}** Here, the evidence indicates the failure to disclose was not inadvertence and he had knowledge of the property being held for his benefit. Defenses of mistake or inadvertence are inapplicable given the evidence.

**{¶63}** Consequently, judicial estoppel applies as a matter of law and estops him from collecting under the trust. The trial court's grant of summary judgment was proper.

### 2. Illegal Purpose/Spendthrift Trust

### And Laches

**{¶64}** Given our resolution that judicial estoppel is applicable, we do not need to address illegal purpose/spendthrift trust or laches arguments. Those arguments are moot.

### Conclusion

**{¶65}** The trial court's grant of summary judgment is affirmed. An express trust was created; however, the doctrine of judicial estoppel forecloses Appellant's ability to benefit from the trust. Both assignments of error lack merit.


Donofrio, P J., concurs.

Waite, J., concurs.


Case No. 21 BE 0033

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**